## Case No. 4,202.

DUTCHER et ux. v. BROOKLYN LIFE INS. CO.

[3 Dill. 87; 4 Ins. Law J. 812; 2 Cent. Law J. 153; 4 Bigelow, Ins. Cas. 665.][1]

Circuit Court, E. D. Missouri. Sept., 1874.[2]

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 4 Bigelow, Ins. Cas. 665, contains only a partial report.]
[2] [Affirmed in 95 U. S. 269.]

Krum & Patrick, for plaintiffs.
Sharp & Broadhead, for the company.

Before DILLON, Circuit Judge, and TREAT, District Judge.

TREAT, District Judge. This is a bill for specific performance. On the 29th of February, 1868, the defendant issued a non-forfeitable policy. The sum insured was $10,000; annual premium $615.40; number of premiums to be paid, ten; term, natural life of the insured, "with participation in the profits." Payment of the $10,000 was to be made within sixty days after death and proof thereof—"the balance of the year's premium, if any, and all indebtedness due, or to become due to the company, to be first deducted therefrom." This seems to contemplate that there would be, or might be, a part of a year's premium and other indebtedness due at the death of the insured.

The policy further provides that "in case" "the premium, as aforesaid," shall not be paid "on or before the day herein mentioned for the payment thereof, or any note or notes which may be given to and received by said company in part payment of any premium, on the day or days when the same shall become due," the policy shall become void. It further provides that "the dividend of profits which may become payable by virtue of this policy to the holder thereof, shall be applied towards the payment of the note taken for part premiums aforesaid, and that if this policy" shall become void, said holder of the policy "shall be liable to pay to said company the amount of all notes taken for premiums, which shall remain unpaid, except the balance remaining unpaid on the note taken for part premiums and payable at twelve months from date, and that the said last mentioned note is to be cancelled by said company on the surrender and cancellation of said policy." There is also a clause absolving the company from liability if the insured becomes an inebriate, "on paying to the holder thereof * * * the amount of all unearned premiums actually received thereon up to the time of such payment."

The next and last provision is as follows: "After two annual payments, should the party wish to discontinue (notice to the company being given before the next premium becomes due), the company will issue a paid-up policy for as many tenths of the amount originally assured as there have been annual premiums paid, in cash." In this case the required notice was given after four payments had been made, and a paid-up policy was demanded for the prescribed four-tenths of the amount insured. The defendant refused the request, unless the plaintiffs would first pay their notes for premiums held by the company; contending that the last clause, cited above, contemplated a previous payment of the annual premiums, in cash. The plaintiffs, on the other hand, insist that those notes are mere loans to them, to be paid out of their share of the dividends, should their share equal the amount of said notes, at the death of the assured—said notes being a lien on the policy for the sum finally due thereon—or, if that be not the true construction of the policy, then the defendant should issue a paid-up policy for $4,000, less the amount of said notes.

The terms of the policy as to notes, quoted above, are not very clear; for they seem to imply in one phrase that many notes for premiums may be outstanding, and in another phrase, that there can be only one outstanding note of the kind, and that for a part of the last premium due. The course of dealing between the parties, however, has put a practical construction on the contract. The receipt for each annual premium paid (as for the last in this case) is as follows:

"Received from Clinton O. Dutcher, $615.40, which continues in force policy 3718, issued by this company, until the 29th day of February, 1872, in accordance with the terms and conditions of said policy.

"Old note returned herewith, the indebtedness being debited against the policy. $547.48; amt. of premium loaned this year, $246.16,—$793.64."

The original agreement, it is admitted, was that of the $615.40 for the annual premium, $369.24 should be paid in cash, and $246.16 in a note at twelve months at seven per cent interest, whereupon a receipt for the payment of the whole premium should be given, the amount of said note to be a permanent loan by the company, until paid by dividends, and that at maturity of said note, a new note, at the same rate of interest, should be given, including the $246.16, and the amount of the former note, less the dividend applicable to its payment. This was the mode pursued each year.

It is further admitted in this case that de-

fendant had always, prior to January 20th, 1871, issued paid-up policies on demand without deducting the loans on outstanding notes, holding such notes as a lien against the paid-up policy; and that since that date the defendant has uniformly refused to issue a paid-up policy unless the holder first paid the outstanding loans or notes.

As there are many like suits pending against this defendant on somewhat similar policies, issued at different times, it may be well to examine them with reference to any changes made by the company in the terms of its subsequent contracts. Thus policy No. 6060, issued March, 1869, is the same as that with reference to which this suit is instituted, except that on the back thereof, in print and writing, the cash-surrender value of the policy is stated for successive years—that value being "exclusive of the value of any dividend, deposits or reversions, which the company will pay in addition;" also that "the above amounts, less any outstanding loans or notes, will be paid on the surrender of this policy, duly receipted, within two months after being forfeited by non-payment of premiums."

The policies of the defendant were stated from the first to be non-forfeitable; yet they contained clauses of forfeiture. Subsequently, as above, the non-forfeitable provisions were attempted to be defined—that is, a surrender-cash value was stated, if the policy was surrendered within two months after forfeiture. Still, in the body of the policy the forfeiture clause for non-payment of premium and notes when due was retained.

Policy 5633, issued in January, 1869, omits the words "non-forfeiture policy," and substitutes for the provision above quoted as the last in the policy, No. 3718 (that in question), these words:

"On surrender of this policy, while in force, after the full amount of two or more annual premiums have been paid in cash, including the payment of any note or notes given on account of premiums, the company will issue a paid-up policy for the amount of premium paid, less any and all dividends paid on said policy."

On the back of policy No. 5633 was the same agreement as to cash-surrender value as that endorsed on policy No. 6060. The company had thus added to the new policies, subsequent to plaintiffs', the requirement of previous payment of notes given on account of premiums; indicating, on its part, that there was previous uncertainty on that point.

It thus appears that the policies issued by this company at the commencement were designed to induce the holders to understand that they included several distinct provisions favorable to the insured, viz.:

1st. They were non-forfeitable. Afterwards they defined, under the head of cash-surrender value, the precise meaning of their non-forfeitable qualities, and limited to two months the condition of non-forfeiture; still

retaining on the face of the policy their non-forfeiture designation, and among the conditions, a forfeiture clause. Such seemingly inconsistent and conflicting provisions exact a construction against the company most favorable to the insured.

2d. They gave to the insured a participation in the profits. For what period of time? When he was insured for his natural life, would not his participation in the profits continue until his death? It matters not that the annual premiums were to cease at the expiration of ten years, if the insurance was for life. The participation in profits may be in various ways—either by corresponding reduction of premiums, in annual cash dividends, or in additions, with or without accumulations of interest, to the principal sum assured.

3d. The defendant's policies determined the mode of the participation in profits when part payment of annual premium was by note. At the time of the next annual premium, which would be the same time the previous note fell due, there would be credited on the note the dividend of profits to which it was entitled. Then the balance, together with the amount payable by note for the next premium, would be included in the new note, and the former note would be cancelled. In that way there would be only one note outstanding. Such was the practical construction given and assented to; yet serious difficulties might have arisen if a forfeiture had been claimed; for it is provided that the holder, when forfeiture occurs, shall be liable to pay all unpaid notes taken for premiums, "except the balance remaining unpaid on the note taken for part premiums and made payable at twelve months from date," and said last note is to be surrendered and cancelled on surrender and cancellation of the policy. If that was the only note which could, in the routine of business be outstanding, and that was to be surrendered and cancelled, for what would the holder be liable? It would seem he would lose only the cash paid on the premiums, and that his notes would be surrendered. But under the clause concerning inebriates, when the company cancels a policy, it must pay back the amount of all unearned premiums actually received. What is meant thereby? Actually received only in cash, or both in cash and notes? The main question in dispute here, is, whether the defendant is bound to issue a paid-up policy except when the annual payments are actually paid in cash or the notes given are also first paid in cash. Under the clause concerning inebriates, the company must pay back the amount of unearned premiums actually received. How received? In cash merely? Certainly, it cannot be fairly contended that the company would absolve itself under that clause by returning the cash payments and holding the assured liable on his notes for premiums. The payment of premiums includes both cash and notes given. Why.

then, should not the phrase in the last clause as to annual premiums, paid in cash, receive equally as broad and favorable a construction?

4th. The policies contemplated part payment by note, and indicated how the notes should be treated in connection with the profits, and also how the sum due on said notes should be met when the policy became payable, viz.: that the sum insured should be paid, less the amount due on the notes.

5th. If the ten annual payments had been made, the original policy would have stood as a paid-up policy, and the last note would have been outstanding, payable in twelve months, by its terms, less dividend accrued. Was it contemplated that it should be paid at the end of said twelve months, when it is admitted that the sum named therein was to be a permanent loan at seven per cent, debited against the policy? If so, what was the inducement as to part payment by note, and as to participation in profits to be applied to the payment of the note? How was the participation of profits to be thereafter enjoyed? The theory of the plan proposed and acted on was a receipt for the annual premiums as for cash, while actually cash was to be paid for part, and a note was to be received as cash payment for the balance. Throughout the ten years no actual payment, even of interest on the notes, was expected, but the balance due thereon was carried into a new note. Practically, it seems, the plan offered to the insured was found not to work satisfactorily to the company, and hence it changed not only the phraseology of its later policies but its own interpretation of the earlier policies. It changed the last clause concerning paid-up policies for tenths, as to "annual premiums paid in cash," so that it should read, "including the payment of any note or notes given," etc.

Through all the various provisions concerning the non-forfeiture, cash-surrenders, issuing of paid-up policies for tenths, and giving of notes, the way those notes should be treated on cash-surrender, or cancellation in case of inebriates—in short, throughout the various contingencies attempted to be provided for, the notes are treated as sums to be accounted for on the final payment of the policies, and not before. It is impossible to reconcile the various provisions with each other, or with the manifest theory on which the earlier policies were based, or with the practical construction given, unless it is held that paid-up policies were to be issued for the tenths named, without the previous payment of the notes, or the deduction of them from the amount of said tenths. If deducted, what was to become of the participation of profits, and what of the interest they bore? The conclusion is, that the plaintiffs are entitled on the facts agreed, to the paid-up policy. The company will hold the notes bearing seven per cent interest, and whatever balance due, less dividends, there may be at the time of the death of the assured, will be deducted from the tenths assured.

The defendant agreed that plaintiffs should participate in the profits during the natural life of the assured; that they should give notes for part of annual premiums; that at the expiration of ten annual premiums the policy should be considered paid up; that the dividends should be applied towards payments of the notes; that the amount payable at the death of the assured should be $10,000, less the balance due on the final note given as above stated. It could not be determined until the death what would be due on that note; for while it bore seven per cent interest annually, it was subject to reduction for dividends. It was uncertain whether the dividends would exceed the interest, or amount to the whole note, principal and interest. Hence, when the paid-up policy for tenths was demanded, the plaintiffs were entitled thereto, without previous payment of the notes.

DILLON, Circuit Judge. The policy here in question is dated February 29th, 1868. The payment of the premiums was to be made each year, part in cash and part in a note for the amount of the premium "loaned by the company to the assured," upon interest. After making four annual payments, the plaintiff elected to avail herself of the last provision of the policy, which is in these words: "After two annual payments, should the party wish to discontinue, the company will issue a paid-up policy for as many tenths of the amount originally assured as there have been annual premiums paid in cash." The company holds the note of the assured, given for previous premiums, less dividends, for $793.64, drawing seven per cent interest.

The assured now demands a paid-up policy for $4,000, which the company refuses to issue, unless she will first pay in cash her note for $793.64, held by the company. The assured concedes, if the company issues the policy for $4,000, that her outstanding note for $793.64, with interest to the death of the person whose life is assured, less dividends, is, by the terms of the policy, then to be deducted from the $4,000.

As shown by my Brother TREAT, the provisions of the policy bearing upon the question now to be decided are far from being harmonious or clear. Under the circumstances, it seems to me that we cannot go far wrong if we hold the company in this case to the same measure of liability that down to January 20, 1871, it voluntarily admitted. It is peculiarly a case, as it seems to me, in which the practical construction put upon the same kind of contract by the company for years should be adopted by the court.

In the agreed statement of facts is the following: "That from the time the defendant began business to the 20th day of January, 1871, it was the course of business of the defendant to issue paid-up policies to policy-holders on demand, without deducting the

loans of the defendant to the policy-holder, and to hold the same as a lien against the paid-up policy, but on and after said date the defendant refused to give a paid-up policy to any policy-holder without the payment first of any loans due defendant by such policy-holder." I give to this course of dealing a controlling influence in my judgment, and, accordingly, am of opinion that the plaintiffs are entitled, on the agreed facts, to a paid-up policy for $4,000, payable at the time and on the terms specified in the present policy as here expounded.

Decree accordingly.