HOGUE v. NORTHWESTERN MUT. LIFE INS. CO.

(Circuit Court, N. D. Georgia. January 23, 1902.)

No. 1,562.

LIFE INSURANCE—CONSTRUCTION OF CONTRACT—RIGHT OF POLICY TO SHARE IN DIVIDENDS.

Defendant, a mutual life insurance company, by whose charter all policy holders if in good standing were members, and entitled to share in profits, issued a policy for $10,000, payable on the death of the insured, the entire premium on which was to be paid in 10 annual installments, a part in cash and a part in notes bearing interest, upon which notes all dividends accruing to the policy were to be applied. The policy contained a provision "that said company further promises and agrees that, if default should be made in the payment of any premium, they will pay, as above agreed, as many tenth parts of the original sum insured as there shall have been complete annual premiums paid at the date of such default." It also further provided that, "if the said premiums or interest upon any note given for premiums shall not be paid on or before the dates above mentioned, * * * the company shall not be liable for the payment of the whole sum insured, but for such part only as is expressly stipulated above." The notes required the interest thereon to be paid annually. The insured paid eight complete annual premiums in cash and notes, together with the interest accruing on the notes previously given up to the time of the last premium payment, after which he made no further payments of premium or interest. *Held*, that by the payments made the policy, by its terms, became a legal and complete policy for the sum of $8,000, carrying all the benefits which would have accrued to it if the remaining two payments had been made, except as to the amount insured, including the right to share in further dividends, which must be applied to the payment of the interest and principal of the outstanding premium notes; and that, such application not having been made, on the death of the insured the beneficiary was entitled to have it made, and to recover the sum of $8,000, less the amount remaining due on the notes.

At Law. Action on life insurance policy, tried by the court without a jury.

Anderson, Anderson & Thomas, for plaintiff.

B. H. Hill, for defendant.

NEWMAN, District Judge. This suit was brought by the plaintiff against the defendant company on a policy of life insurance. The plaintiff was the beneficiary, and her husband, David Scott Hogue, the insured. The case was submitted to the court on the law and facts, without the intervention of a jury.

The parties have agreed on the following statement of facts:

"That the defendant issued on the 15th day of January, 1867, to the plaintiff the policy of insurance sued on, upon the life of the plaintiff's husband, David Scott Hogue, and that the copy of said policy, which is attached to the declaration in said suit, is a correct copy thereof. That eight complete annual payments by cash and notes were paid by the plaintiff and her husband on said policy of insurance, in accordance with the terms thereof, to wit, for the premiums which under the terms of said contract were due on the 15th day of January in the years 1867 to 1874, both inclusive. That the plaintiff's husband died on the 22d day of June, 1899, and proofs of death in the form required by the company were made and filed with said company. That the part of the annual premiums required to be paid in notes each year, to wit, two hundred and fifty-two dollars and ten cents, was so paid, and notes for that amount were each year given to the defendant during the years 1867 to 1874, both inclusive. Two of said notes, to wit, the two notes made January 15, 1867, and January 15, 1868, respectively, were paid off, and returned to the plaintiff by the defendant, out of the dividends earned during the years 1871, 1872, 1873, and 1874; said dividends so earned being as follows: 1871, $160.90; 1872, $92.10; 1873, $117.10; 1874, $150.70; or a total amount of five hundred and twenty dollars and eighty cents ($520.80); which, being applied to the payment of said notes, paid off the first two thereof, as above stated, and entitled the third to a credit of sixteen dollars and sixty cents ($16.60), which was credited thereon, leaving the balance due upon that note two hundred and thirty-five dollars and fifty cents ($235.50). True and correct copies of notes Nos. 3 to 8, inclusive, are hereto attached and made a part of this agreement; and it is agreed that the form and substance of notes Nos. 1 and 2 were exactly like those hereto attached, differing only in the dates. That on January 15, 1875, a note was given by the plaintiff's husband to the defendant for three hundred and ninety-eight dollars and seventeen cents ($398.17) as an extra note for cash premium and interest then due, a true and correct copy of which is hereto attached and made a part of this agreement. And on January 15, 1874, a note was given by the plaintiff's husband to defendant for four hundred and forty-seven dollars and forty-three cents ($447.43), being an extra note for cash premium and interest then due, a true and correct copy of which is hereto attached and made a part of this agreement. That receipts were given by said defendant to the plaintiff for the said eight annual premium payments, acknowledging the payment thereof in each instance; all of which were in form and substance, differing only in date and in the amount of accrued interest, exactly like that dated the 15th day of January, 1870, the original of which is hereto attached and made a part of this agreement. That neither the said defendant nor her husband, David Scott Hogue, paid any other premiums, either in notes or cash, after the 15th day of January, 1874, but that all interest due on premium notes given prior to that date were paid either in cash or by note, up to said January 15, 1874. That, within ninety (90) days after the filing of proofs of claim by the plaintiff with the defendant, the latter tendered to her the sum of one thousand four hundred and eighty-nine dollars and seventy-seven cents ($1,489.77), claiming that that sum was the amount due to her upon said policy of insurance, and the said

plaintiff declined and refused to receive the same in full satisfaction of her said claim."

Copies of resolutions passed by the directors of the defendant company from 1875 to 1898, inclusive, are agreed upon and are attached. The resolution passed on July 30, 1875, is as follows:

"Resolved, that a dividend shall be paid in the usual manner to such policy holders only as shall duly meet whatever cash payments may fall due on the anniversaries of their respective policies in 1876, according to their several contributions to the company's surplus, and that the actuary be, and is hereby, instructed to compute such dividend on the business of 1874 on such scale as to make the sum disbursed on that account in the year 1876 amount, as near as may be, to eight hundred and forty thousand ($840,000) dollars."

There was no substantial difference in the resolutions for the subsequent years on the point which is claimed to be material here. A somewhat different resolution, however, passed on July 20, 1886, it is agreed is as follows:

"Resolved, that after December 31, 1886, the surplus arising in the fifth and succeeding policy years of any participating policy be allowed as dividend, on the usual conditions, at the close of such years, respectively, but that surplus arising in either of the first four years be held a year, as heretofore; it being the object of this change to retain the existing conservative system up to the end of five years from the date of each policy, and thereafter to make returns of surplus as speedily as possible to the members from whose payments it may be found to arise."

Counsel also agreed to use the act of incorporation of the Northwestern Mutual Life Insurance Company and the amendments thereto, including those of April, 1887; also the by-laws of the company, so far as they are pertinent to the issues in the case. It was also agreed that either party could use the original policy of insurance as they might desire. It was further agreed that the court might consider any and all admissions made by either the plaintiff or defendant contained in any of the pleadings in the case. There were certain agreements as to dividends earned by the company which are not material for the present purpose.

The policy of insurance issued to the plaintiff on the life of her husband was for $10,000. The entire premiums were to be paid in 10 annual installments. The policy contained, however, this provision:

"And the said company further promises and agrees that, if default should be made in the payment of any premium, they will pay, as above agreed, as many tenth parts of the original sum insured as there shall have been complete annual premiums paid at the date of such default."

It is conceded that in cash and notes the premiums were paid for eight full years, which under the terms of the policy made it a good policy, payable at the death of the insured, for $8,000. What other rights it had is the question for determination.

The premium notes outstanding against the plaintiff bear interest at the rate of 7 per cent. per annum. The notes contain language forfeiting the policy if the interest is not paid annually, which provision is not insisted upon. They also contain this language: "The dividends on the policy are to be applied to the payment of the notes."

The company claims that it had the right, at the death of the insured, in 1899, to compute the interest on the notes, compounding

it each year, and then adding interest to principal, and deduct the aggregate from the $8,000 called for by the policy. The plaintiff insists that, as against the principal and interest so computed, she has the right to offset the dividends which an $8,000 policy earned from January, 1875, until the death of the insured. By the charter of the defendant company all persons insured therein are members and entitled to participate in profits, subject to certain restrictions as to default on the part of the holder of the policy.

Counsel for defendant in this case relies largely on a provision in the policy on which the present suit is brought, which is as follows:

"If the said premiums, or interest upon any note given for premiums, shall not be paid on or before the dates above mentioned for the payment thereof, at the office of the company, or to agents, when they produce receipts signed by the president and secretary, then in every such case the company shall not be liable for the payment of the whole sum insured, but for such part only as is expressly stipulated above."

He says, taking this in connection with what has been already stated of the terms of the policy, viz., that they will pay as many tenths of the original sum insured as there shall have been complete annual premiums paid at the time of such default, that, therefore, when the premium due January 15, 1875, was not paid the policy by its terms lapsed, except as to that portion already secured by the payment of premiums, and the company was liable for such part only as was then secured. Counsel for the company in his brief makes this further statement:

"Besides, no interest was paid on any outstanding premium note after January 15, 1874, and by the terms of the premium notes this interest was to be paid annually or the policy forfeited. The condition in the notes that the failure to pay interest would forfeit the whole amount of the policy has been frequently decided; but the company in this case construes the forfeiture clause in the notes in connection with the forfeiture clause in the policy as applicable to that portion of the amount which was not secured by complete annual payments of premium. In other words, it concedes that the eight complete annual premiums mentioned by cash and note secures absolutely eight-tenths of the policy which was nonforfeitable, less outstanding premium notes, with interest thereon. The defendant insists—First, a failure to pay the cash part of any premium, or to give a note for the note part, when the same became due, forfeits, not the entire policy, but all of the policy and future benefits thereunder, except so many tenths as there have have been made annual payments of premiums by cash and notes; second, the failure to pay in cash the interest on premium notes at the time when the interest became due forfeits the whole policy, except as above stated."

The contention of counsel for defendant, briefly stated, therefore is that the failure to pay premiums for the full period of 10 years, although premiums for several years have been paid, works such default as to deprive the insured or the beneficiary of all future benefits under the policy. It can hardly be doubted that, if the premiums had been paid in cash and notes for the entire period of 10 years, the beneficiary would have been entitled to dividends on the policy from the time of the expiration of the period until the death of the insured. If the company issues an ordinary life policy, the premium to be paid every year from the time the policy is issued until death, it is conceded that the person so insured would be entitled to the full dividends. In a policy of the character now under consideration, such additional

amount of premium is fixed and collected as will justify the company in agreeing that if the stipulated amount is paid for 10 years, or for any less number of years, it will entitle the beneficiary to the amount provided for, payable at the death of the insured. The fact is, of course, that a calculation made as to a large number of lives would show the same result in favor of the company in both classes of policies. Why should there be any distinction, then, between members holding the two classes of policies, as to the right to share in the profits of the company? There is none in reason or under the terms of the contract of insurance.

So that the matter to be determined here is, does the failure to pay for the full period of 10 years work such default as to deprive the holder of the policy of rights or benefits that would accrue in case the 10-years payments were made? It is true that the term "default" is used in the clause of the policy providing for the payment by the company, at death, of as many tenths as there shall have been complete annual payments, but this expression is as to succeeding payments. The right to what has been acquired by payments already made is as complete as if payments for the full period were made. No qualification is put on the right of the holder of the policy paying for less than the full period, except as to the amount, and that is fixed by the number of annual payments. The company, having issued a policy of this kind, certainly cannot be heard to say that the holder of such a policy is in "default" because such holder avails herself of a right granted by the policy. There is nothing whatever in the contract of the parties which makes the rights of the holder of this policy less than they would have been had payments been made for the full period of 10 years, except as to the amount, and she must be held to be entitled to the same benefits.

It is unnecessary to review the interesting cases cited on the briefs of the counsel for the respective parties. The greater number of these cases are upon the question of forfeiture for nonpayment of interest, and this, as has been stated, is not insisted upon by counsel representing the defendant company. The case which comes more nearly to deciding the precise question for determination here is Dutcher v. Insurance Co., 3 Dill. 87, Fed. Cas. No. 4,202. That case was decided by Judges Dillon and Treat in the circuit court for the Eastern district of Missouri, and, while other reasons appear to have controlled the decision there made, the right of the policy holder to have dividends under conditions such as exist in the case at bar appears to have been determined. This case was taken to the supreme court of the United States (Insurance Co. v. Dutcher, 95 U. S. 269, 24 L. Ed. 410); and, while the decision there was not upon the question here involved, there was no dissent whatever from the views upon this question expressed by the judges in the court below.

The conclusion reached in this case is that this policy is entitled to dividends from January 15, 1875, to the death of the insured, and that the plaintiff has the right to set off such dividends against the interest on these premium notes which accrued from year to year, and, if such dividends were more than sufficient to pay such interest, then against the principal to the extent that such dividends should go.