## INSURANCE COMPANY *v.* DUTCHER.

The court holds that the assured, having elected to discontinue the payment of premiums, is entitled to a paid-up policy *pro tanto*, without paying her note to the company for part premiums, but that the note will be a lien on such policy, and, with interest, less the accruing dividends of profits, must, when the policy becomes payable, be deducted from the amount thereof.

APPEAL from the Circuit Court of the United States for the Eastern District of Missouri.

This was a bill in equity filed by Clinton O. Dutcher and wife against the Brooklyn Insurance Company of New York, claiming that Mrs. Dutcher, under her contract with the company, and by reason of her payment of certain annual premiums, was entitled to a paid-up policy of insurance upon the life of her husband for $4,000, and praying for a specific performance. A decree was rendered for the complainants, and the company appealed here.

The facts are stated in the opinion of the court.

Submitted by *Mr. J. O. Broadhead*, for the appellant.

There was no opposing counsel.

MR. JUSTICE SWAYNE delivered the opinion of the court.

In order to reach the proper solution of the question to be decided, it is necessary at the outset carefully to analyze so much of the policy as bears upon the subject.

It was there stipulated, that, in consideration of the payment of the sum of $615.40, and the payment of that sum annually thereafter on the twenty-eighth day of February, until ten years' premiums should be paid, the life of Clinton O. Dutcher was assured for the term of his natural life in the sum of $10,000, with participation in the profits of the company.

The insurance money, upon his death, was to be paid to Annie C. Dutcher, his wife, or her legal representatives, the balance of the year's premium, if any, and all indebtedness to the company, to be first deducted.

If the stipulated premium should not be paid on the day fixed upon for its payment, or any note given to the company in part payment of any premium should not be paid on the

day when the same became due, then the company was not to be liable for any part of the sum assured, and the policy was to become void.

The dividends of profits declared were to be applied towards the payment of the note taken for "part premiums."

If the policy should become void, Annie C. Dutcher or her legal representatives were to be liable to pay to the company the amount of all notes taken for premiums which should remain unpaid, except the balance remaining unpaid on the note taken for part premium, and made payable twelve months from date, and the last-mentioned note was to be cancelled upon the surrender of the policy.

After two annual payments, should it be desired to discontinue the policy, the company was to issue "a paid-up policy for as many tenths of the amount originally assured as there had been annual premiums paid in cash."

Such being the policy, we are next to consider the admitted facts, as shown by the agreement of the parties.

At the time of the execution and delivery of the policy, the parties agreed that the annual premium of $615.40 should be paid each year, as follows: $369.24 in money, and $246.16 in the promissory note of Annie C. Dutcher, payable twelve months from date, with interest at the rate of seven per cent.

On the payment of the money and the delivery of the note a receipt for $615.40, the amount of the premium for a year, was to be delivered to Annie C. Dutcher, the amount of the note to be a permanent loan to her, bearing interest at the rate of seven per cent per annum, until paid by dividends of profits.

At the maturity of the note, a new note, bearing the same rate of interest and covering the amount of the prior note (except as reduced by dividends), and the amount of $246.40 of premium for the current year, was to be given; and so on from year to year during the existence of the original policy.

Annie C. Dutcher did, accordingly, on the 29th of February, 1868, pay the company $369.24 in money, and $246.16 in her promissory note drawn as aforesaid.

The company thereupon gave her a receipt, specifying the payment of $615.40, in full of the premium for the ensuing year, and that $246.16 of the premium had been loaned to her.

This arrangement was carried out also with reference to the premiums due Feb. 28, 1869, Feb. 28, 1870, and Feb. 28, 1871. This continued the original policy in force until Feb. 28, 1872. The amount due to the company after the adjustment of the premium of 1871 was, including the amount due upon the prior notes so given, $793.64.

Annie C. Dutcher thereupon, after due notice, demanded a paid-up policy. The company refused to issue it unless she would first pay the $793.64 so due from her, which was a lien against the existing policy. She declined to comply with this demand.

It is further agreed, that from the time the company began business to the 20th of January, 1871, it was the course of business of the company to issue paid-up policies to policy-holders on demand, without reference to their indebtedness to the company, arising as before stated, and to hold such indebtedness in each case as a lien against the paid-up policy, but that on and after that date the company refused to give a paid-up policy to any policy-holder, without the payment first by the policy-holder of the amount owing to the company.

In this condition of things the appellees instituted this suit to compel the delivery of a paid-up policy. The court below decreed in their favor. The decree was conditioned that the sum of $793.64, and interest at the rate of seven per cent, owing to the company, less the accruing dividends of profits, should be a lien against the new policy, and that the amount due to the company at the death of Clinton O. Dutcher should be deducted from the sum then to be paid to the assured upon the policy. The company removed the case to this court by appeal. It is thus brought before us for consideration.

We think the decree is right.

The agreement set out in the admitted facts supplemented the policy. It had all the elements of validity. It was made by parties competent to contract. There was the requisite meeting and assent of minds. No canon of the law was violated. It stipulated expressly that the amount of the note given for the designated part of the annual premium was to be "a permanent loan from the company to Annie C. Dutcher, bearing interest at the rate of seven per cent, until paid by

dividends." The receipt was for " six hundred and fifteen $\frac{40}{100}$ dollars, which continues in force the policy," &c. The part of the premium for which the note was given each year was described as "amount of premium loaned this year." The policy provides that the amount of the note unpaid, if any, when the sum secured by the policy became payable, was to be deducted from the amount of the insurance money to be paid. This was the stipulation upon the subject. Beyond this there was no condition or qualification touching the note. The rights of the parties are thus clearly defined. Nothing is said in this connection as to any payment or discharge of the note in any other way than those thus prescribed. The note was to be renewed every year for the proper amount, and credited regularly with the accruing dividends during the life of the policy. But it is said the policy declares that the amount of the paid-up policy should be determined by the sum of the premiums " paid in cash."

To this there is an obvious, and, we think, a conclusive answer. The part of the annual premium for which a note was to be given was in substance and effect a loan of so much money by the company to the assured. It was so described in the receipt of the company for the premium, and in the contract of the parties. If the money had been actually paid to the company, and the next moment loaned back, and the note then taken, there would not have been room even for a quibble upon the subject. Why go through such a ceremony? Why not go directly, as was done, to the end in view? The intent which animated the conduct of the parties determines its character. The receipt and contract both show that the transaction was regarded by both parties as a payment of money to one and a loan back to the other, for which the note was taken. The receipt was for the full amount of the premium. The note and loan were mentioned by way of memorandum, as a distinct matter. The law never requires an idle thing to be done. It would clearly have been this, and nothing else, if the assured had actually handed over the money and note with one hand, and *eo instanti*, with the other taken back the money. The company had the power to waive the actual production and payment of the money, and to receive a note bearing

interest as the same thing.    It has exercised this power, and is estopped to deny the consequence.  Where a surety, by giving his note, extinguishes the liability of his co-surety, he can maintain an action against the co-surety for money paid; because the effect is the same that would have been wrought by the actual payment of the money.

The agreed fact must not be overlooked, that the company, from the time it commenced business, until the year 1871, — more than two years after entering into the contract with the assured, — always issued paid-up policies upon the basis of the full amount of premiums paid as they were paid by the assured appellee, making no distinction between the notes and money received by the company for the premiums.

The practical interpretation of an agreement by a party to it is always a consideration of great weight.   The construction of a contract is as much a part of it as any thing else.   There is no surer way to find out what parties meant, than to see what they have done.   Self-interest stimulates the mind to activity, and sharpens its perspicacity.   Parties in such cases often claim more, but rarely less, than they are entitled to.   The probabilities are largely in the direction of the former.   In considering the question before us, it is difficult to resist the cogency of this uniform practice during the period mentioned, as a factor in the case.

It was competent for the company, under proper circumstances, at any time to change its rule with respect to the future; but it could not affect vested rights acquired in the past, while a different rule prevailed.

Prior contracts must be carried out as they were when they were entered into.   Neither party, *in invitum* as respects the other, can make any change.   When it was proposed by the assurer to apply the new rule and practice in this case, the assured might well say, " *non in hæc federa veni,*" and insist upon the interpretation which prevailed in other like cases when the parties became bound to each other, and continuously, for two years later.   The proper way to make the change was to employ such language for that purpose as would create certainty and exclude doubt.   It appears from a passage in the opinion of one of the learned judges below that this was done in sub-

sequent cases by expressly excluding the notes from the basis of the computation, and confining it to the cash payments.

But, irrespective of this, we entertain no doubt upon the point in question.

The conclusion to which we have come will involve neither hardship nor hazard to the appellant. The note bears seven per cent interest. The debt will be a lien against the new policy, and nothing can be collected upon it until the entire amount due to the company shall have been first deducted. The security will, therefore, be perfect.

*Decree affirmed.*

Mr. Justice Bradley dissented.