DAVID C. WOOLSEY et al., Respondents, *v.* HUGO FUNKE, Appellant.

Defendant chartered a steamboat to plaintiffs for the purpose of trans-porting passengers. The charter-party provided that plaintiffs should "furnish said vessel at their own expense, * * * with all supplies required by said vessel during the term aforesaid, except water, the cost of which water, and all wharfage incurred by said vessel during the term aforesaid," the defendant agreed to pay. After running the boat for a time defendant abandoned its use, because of alleged viola-tions of the charter-party upon the part of the plaintiffs. In an action to recover damages because of alleged violation of the charter-party, defendant claimed among other things, a breach of contract on the part of plaintiffs in that the boat did not run the stipulated number of trips. The trial court found that the delay in leaving on time was caused by the failure of defendant to furnish the steamer with water in time to enable her to leave her landings at the times fixed. Defendant claimed on appeal, that under the charter-party plaintiffs were bound to furnish

the water, the expense thereof to be paid by him. *Held*, untenable; that defendant, not the plaintiffs, was bound to furnish the water; also, *held,* that if such interpretation of the language of the contract was not clearly right, the language was at least ambiguous or indefinite; and it appearing by evidence received without objection, that the parties in their negotiations before the execution of the contract and their acts afterward so construed it, this practical interpretation by them was a consideration of great importance in determining the intent.

(Argued March 7, 1890 ; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 24, 1888, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial without a jury.

The nature of the action and the facts are sufficiently stated in the opinion.

*Ira D. Warren* for appellant. In all maritime transactions expedition is of the utmost importance. If either party is not ready at the time appointed for loading, the other may seek another ship or cargo. (Abbott on Shipping, 249, 271 ; Kent's Comm. [9th ed.] 279 ; *Weisser* v. *Maitland*, 3 Sandf. 318 ; *Filley* v. *Pope*, 115 U. S. 213 ; *Norrington* v. *Wright*, Id. 188.) The court erred in finding that the delay in leaving was caused by the failure of the defendant to comply with his obligation under said charter-party to furnish said vessel with water in sufficient time to enable her to leave her landings at the times fixed by the defendant. (Worcester's Dict., see " Furnish ; " 2 Parsons on Cont. 499.) All the evidence of what occurred and was said previous to the making of this contract was merged in it. Such evidence cannot be resorted to for the purpose of contradicting or varying this contract. (*Eighmie* v. *Taylor*, 98 N. Y. 288 ; *Snowden* v. *Guion*, 101 id. 462.)

*Mark Ash* for respondents. A question not presented on the trial cannot be heard in this court. (*Salisbury* v. *Howe*, 87 N. Y. 128 ; *O'Neill* v. *N. Y. & O. Co.*, 115 id. 579 ; *Neftel* v. *Lightstone*, 77 id. 96 ; *French* v. *Carhart*, 1 id. 102 ;

*Coyne* v. *Weaver*, 84 id. 386; *Coleman* v. *Beach*, 97 id. 553.) The making of the trips at the times fixed by defendant was dependent upon his supplying the vessel with water in time. By his failure to do so he prevented the plaintiffs from performing the agreement and they are excused, and if anybody is estopped, he is. (*Gallagher* v. *Nichols*, 60 N. Y. 438, 448; *Risley* v. *Smith*, 64 id. 576, 582.) After defendant declined on August first to give the vessel further employment, there was no further duty on plaintiffs' part to be in readiness to perform. (*Howard* v. *Daly*, 61 N. Y. 362, 370.) The allowance of $350 for the services of Woolsey rendered after August first, in reference to the employment of the vessel until the expiration of the charter, was properly included in the damages. (*Farwell* v. *Davis*, 66 Barb. 78.)

PECKHAM, J. The defendant appeals from an affirmance by the General Term, of a judgment against him in favor of plaintiffs in this action, which is brought to recover the damages plaintiffs allege they have sustained by reason of defendant's violation of a charter-party entered into between them for the hiring of the steamer Emeline. The boat was chartered for the purpose of transporting passengers between New York and College Point, on Long Island. The agreement was made on the 12th of February, 1887, and the defendant's possession of the boat was to commence on the twenty-first of May and terminate on the 10th of October, 1887.

The boat was delivered to defendant in due time and was run by him until the thirty-first of July, when he gave notice to plaintiffs' captain on board the steamer that the boat was no longer in his employ, because, as he alleged in the notice, the plaintiffs had repeatedly violated the terms of the charter-party and continued to do so. The plaintiffs then sought other employment for the boat and found it, but at a less price than that provided for in the charter-party, and having given the defendant notice that they did not receive the boat back excepting on defendant's account, and that they should hold him responsible for any loss, they have commenced this action to

recover the difference between the price named in the charter-party and that which they were able to earn by the steamer during the existence of such agreement.

The defendant in his answer set up various violations of the terms of the charter-party by the plaintiffs, and alleged that they did not furnish the vessel with a sufficient crew, and all the supplies required by the vessel; that the vessel did not perform six trips from New York to College Point as agreed; that the trips were performed irregularly; that the crew was insubordinate and incompetent, and insulting to defendant and to passengers; that the landings were made unskillfully and in a manner detaining and dangerous to passengers, and calculated to, and which did injure and damage the defendant.

The trial court found against the defendant upon all these issues. He claims that the courts below have misconstrued the obligations of the plaintiffs as to the furnishing of water by them to the steamer, and that the plaintiffs did not furnish such water and have violated their contract, and he asserts that the effort of defendant to furnish it was no excuse to them.

The charter-party contained a provision which is as follows: "The parties of the first part" (that is the plaintiffs) "further agree to furnish said vessel at their own expense, with a sufficient crew of not less than fifteen hands, and all supplies required by said vessel during the term aforesaid, except water, the cost of which water and all wharfage incurred by said vessel during the term aforesaid, the party of the second part agrees to pay."

The defendant claims here that the true construction of this provision requires the plaintiffs to furnish the water, and that the only obligation on the part of the defendant was to pay the cost thereof. The importance of this construction becomes apparent when it is seen that the trial court found that the delay in leaving on time was caused by the failure of the defendant to comply with his obligation under such charter-party to furnish the vessel with water in sufficient time to enable the vessel to leave her landings at the times fixed by the defendant. If this obligation rested upon the

defendant, and if it had not been by him fulfilled, and his failure to fulfill it was the reason of the delay, then of course, so far as delay figured as a reason for an abandonment of the vessel by the defendant, it furnished no legal justification for his action. I think the language is somewhat ambiguous. The plaintiffs are to furnish all supplies, except water, the cost of which water the defendant is to pay. The defendant says he has only contracted to pay for the cost of the water, but not to furnish it. Have the plaintiffs in this charter-party made any specific agreement to furnish the water? Not at all. They have agreed to furnish all supplies required by the vessel, except water. The defendant has agreed to pay for the cost of it. If the plaintiffs have made no agreement to furnish it, the agreement of the defendant is fully carried out if he contracts with some one else to furnish the water to him and he agrees to pay him for it. Certainly the plaintiffs would have no right to complain that the defendant procured the water from some one other than themselves, and in that way paid the cost of it. They would have no such right, because as it seems to me there is nothing in the contract binding the defendant to take the water from them, and there is certainly no language on their part by which they bind themselves to furnish it. It is claimed, however, that there is an implied obligation on the part of the plaintiffs to furnish the water, founded upon the peculiar character of the language used, where they contract to "furnish all supplies, except water, the cost of which water" the defendant agrees to pay. It is claimed that the only use of the exception is to qualify the obligation of the defendant, leaving that of plaintiffs exactly the same in the first instance with regard to the water as with regard to all the other supplies, and that they are still bound to furnish the water just as much as, for instance, the coal, only the defendant must pay for such supply of water.

I incline to the other view for the reasons already stated. I cannot see that the plaintiffs have anywhere promised to furnish the water, but on the contrary, by their language they

have excepted that article from their obligation to furnish the
boat with supplies. Nor can I see where the defendant has
bound himself in any way to take the water furnished by the
plaintiffs.

But if I am not clearly right in this interpretation of the
language, it must at least be admitted, as it seems to me, that
the language is somewhat ambiguous or indefinite. Under
such circumstances the practical interpretation of this agree-
ment by both parties is a consideration of very great impor-
tance. As was said by Mr. Justice S wayne in *Insurance
Company* v. *Dutcher* (95 U. S. 269, 273), "the construction
of a contract is as much a part of it as anything else. There
is no surer way to find out what parties meant than to see
what they have done. Self interest stimulates the mind to
activity and sharpens its perspicacity. Parties in such cases
often claim more, but rarely less than they are entitled to.
The probabilities are largely in the direction of the former."
Let us see then what the parties have said and done in regard
to this matter.

One of the plaintiffs proved by his own evidence, which was
wholly unobjected to, that in an interview he had with defend-
ant, before the execution of the contract, the latter showed him a
proposed schedule of trips for the steamer, and asked if she
could do it. The plaintiff asked what kind of water he (defend-
ant) was to get for the use of the vessel. Defendant said they
had water at College Point, and he would continue the water-
pipe to the docks. He said the water was seventy pounds
pressure. Plaintiff told him that he thought without doubt
the boat could make the proposed time, if he (defendant) gave
her time for water; and in respect to water defendant said
she could get sufficient water in ten minutes.

The defendant himself was examined in his own behalf on
the trial, and in speaking of his interview with one of the
plaintiffs before the execution of the charter-party, defendant
said : "As to the charter price, he" (plaintiff) "hadn't quite
decided that day, but speaking about the wharves and water,
these two items I had to furnish. * * * I said to him

that the water-main of the village of College Point ran down nearly to where I had begun to build the dock, and I would bring a pipe down to the end of the dock, so the hose could be attached there and he could get a supply of water there. * * * After that time, as soon as the charter-party was signed, I ran a pipe down to the dock. * * * In pursuance of the conversation I had, I built a dock and put a pipe down to the end of it. I connected it with the main forming part of the water-works of the village."

One of the plaintiffs says that the pressure on the pipe, instead of seventy pounds, was probably not half that, and it took three-quarters of an hour to fill the tanks of the steamer, instead of ten minutes. The plaintiff called defendant's attention to this state of things, and he answered, " How can we remedy it?"

In his answer the defendant goes into detail as to the various violations of the contract by the plaintiffs, as I have enumerated them above, but he nowhere alleges specifically a violation of the agreement on the part of the plaintiffs by not furnishing the steamer with water. Upon the trial, the whole burden of the defendant's case was laid upon proving the various violations of the agreement which he had set up in his answer, but not any evidence was given as to the failure of the plaintiffs to furnish water. The record shows that the defendant contended for the violations as already stated, and he claimed that the state of the boiler, its leakings and general condition, and the awkward and dilatory manner in which landings were effected, caused the failure of the boat to make its trips and keep up to schedule time, and for those reasons, as well as on account of the behaviour of the crew toward passengers, and the failure to make landings when expected, the defendant urged that he had a right to refuse to go on with the contract. He showed by one of his witnesses (Beach) that, in his opinion, the delays were not caused by the water, and it is evident from the testimony of the defendant, that he was of the same opinion, and that his ground for action was the violations already spoken of.

From this survey of the actions of all parties, and from the evidence of both parties to the contract, it is clear that they interpreted its obligation in the same way that I have done, and the defendant never thought that the plaintiffs had to furnish the water, while he had only to pay its cost, until after the trial and the finding of the court that the failure of the steamer to keep time was on account of defendant's failure to furnish the water.

We think the construction of the contract given below was the true one. This leads to an affirmance of the judgment.

All concur.

Judgment affirmed. _____