WILLIAM NICOLL, Appellant, *v.* CHARLES G. SANDS et al.,
Respondents.

Upon an application to the authorities of the town of I., pursuant to the
provisions of the act in relation to the creation of water-works companies
in towns and villages (Chap. 737, Laws of 1873, as amended by chap.
369, Laws of 1889), which stated in writing the intention of the signers
to supply the town and its inhabitants with pure and wholesome water,
said authorities, among whom were the commissioners of highways, in
giving their official written consent, recited that the applicants had
organized for the purpose of forming a water-works company to supply
the town and its inhabitants with pure and wholesome water. After
the company was incorporated and officers elected, a contract was entered
into by it with the town authorities, in which it agreed for a sum speci-
fied, to be paid annually by the town, to erect water-works and lay pipes
in the principal streets of the town, under the direction and super-
vision of the highway commissioners, to erect and operate pumps of a
specified capacity, and to erect two hundred hydrants, "the same to be
used for the extinguishment of fires only." The company went on and
performed the contract, also provided water for private consumption,
and was furnishing to the inhabitants of the town, water as agreed, when
this action was commenced by a taxpayer of the town to restrain the
imposition and collection of a tax to pay for said water supply as pro-
vided for by the contract. After the commencement of said action the
town authorities signed a writing in which they stated what had been
done by the company, and that they accepted and approved the per-
formance of the contract by it. *Held*, that the contract was valid and
binding upon both the town and the water-works company; that the
company obligated itself not only to erect the water-works and lay the
pipe but to furnish the water; that the limitation as to the use of the
water applied only to the hydrants, not to its use by the town authorities
for other than fire purposes; that the company was obligated to deliver
pure and wholesome water to the town authorities to the specified
capacity of the pumps, and the fact that the formal acceptance of the
contract was after the commencement of the action, was not material.
By the contract the pipe was to be laid under the supervision of the com-
missioners of highways who signed it on behalf of the town; their services
to be paid for by the company. It appeared that there was no conversa-
tion as to the compensation of the commissioners until the terms of the
contract had been fully agreed upon and written out, and that the terms
were fair and just. There was no proof that the supervision was not
faithfully executed or that the contract was not carried out in good
faith by the company. *Held*, that the amendment of said act in 1886
(Chap. 452, Laws of 1886) did not impose upon the commissioners the

duty of supervision, and in the absence of any such statutory provision, under the circumstances presented, the provision for compensation to the commissioners did not render the contract invalid.

*It seems*, that while there is no unbending rule of law prohibiting under any contingency such a provision, it is of so questionable a nature as to call for the most scrutinizing review of the result by the courts, and very slight evidence of improper or unfair execution of duty upon the part of the officer or of a failure to perform the contract by the company, giving the strictest construction to its requirements would require a finding of a fraudulent motive for its insertion, and that the *onus* is upon the company to show that the contract is just and fair, and has been justly and fairly carried out.

(Argued December 22, 1891; decided January 20, 1892.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made May 11, 1891, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff as a taxpayer of the town of Islip to restrain the imposition and collection of a tax levied upon the property in said town to pay the Great South Bay Water Company, one of the defendants, certain money, under an agreement made with the authorities of said town by which said company agreed to erect water-works and lay in the principal streets of the town twenty-three miles of pipe, "for the purpose of supplying the town and its inhabitants with pure and wholesome water in accordance with the grant of right of way to lay pipes, etc. * * * said pipes to be laid under the direction and supervision of the highway commissioner of each district * * * and to erect two hundred fire hydrants at such points on the line of said pipes as shall be designated by the said town authorities in accordance with the grant heretofore passed, the same to be used for the extinguishment of fires only, and all reasonable exhibitions and practice by the fire departments and fire companies of the town * * *. The services of said highway commissioners to be paid for by said company." The contract also provided that "there shall be erected and operated two pumps of

standard manufacture and appropriate size, each having a capacity of pumping one million gallons in every twenty-four hours." The town stipulated to pay said company $6,000 per annum for twenty years.

Further facts are stated in the opinion.

*George A. Black* for appellant. The contract was not executed in conformity with the power and authority given by chapter 369 of the Laws of 1889. (*Booth* v. *C. M. Co.,* 74 N. Y. 22; *S. W. Co.* v. *City of Syracuse,* 116 id. 178.) A contract made under statutory power, by virtue of which the property of a citizen may be taken under the guise of taxation, must be within the strict terms of the power in order to affect the citizen's rights. (*People* v. *Spencer,* 55 N. Y. 1; *Town of Solon* v. *S. Bank,* 114 id. 130; *People* v. *Hurlburt,* 46 id. 110; *Town of Wellsboro* v. *N. Y. & C. R. R. Co.,* 76 id. 182; *Dickinson* v. *City of Poughkeepsie,* 75 id. 65; *S. W. Co.* v. *City of Syracuse,* 116 id. 167.) It will not do to state that the water company have made their contract, have expended their money, and, therefore, should be protected, as might be said of an individual. (*Parr* v. *Vil. of Greenbush,* 72 N. Y. 463.) The court erred in their construction of the contract. (*Armstrong* v. *Grant,* 56 Hun, 226.) There was no *laches* on the part of the plaintiff. (*N. Y. R. Co.* v. *Rothery,* 107 N. Y. 310.) The court erred in finding that "after the execution but before the delivery of the contract," the water company agreed to pay the highway commissioners three dollars per day "for the days actually spent by them in said inspection." (*Stokes* v. *Phelps,* 47 Hun, 570; *In re Breslin,* 45 id. 210; *Power* v. *Vil. of Athens,* 99 N. Y. 592; *People* v. *Jaehne,* 103 id. 182; *Heckman* v. *Pinkney,* 81 id. 211; *Anderson* v. *Anderson,* 112 id. 104; *Garnett* v. *Bradley,* 48 L. J. [N. S.] 186.)

*Timothy M. Griffing* for respondents. The application required by the statute was made by this company. (Laws of 1886, chap. 452, § 1.) The company could only be organized

under the special act permitting the organization of water-works companies. (Laws of 1889, chap. 492, § 5.) There is an implied covenant on the part of the water company to furnish and maintain, during the existence of the contracts, an abundant supply of water for the purposes mentioned in the statute. (*Jones* v. *Kent*, 80 N. Y. 588.) If the company had refused to furnish this supply of water, the town could have brought an action for specific performance or for damages. (*Booth* v. *C. R. Mill*, 74 N. Y. 15; *Jones* v. *Kent*, 80 id. 588; *N. E. I. Co.* v. *G. E. R. R. Co.*, 91 id. 153; *Mansfield* v. *N. Y. C. R. R. Co.*, 102 id. 211.) The appellant, by reason of his *laches*, cannot maintain this action. (*White* v. *Town of Stamford*, 37 Conn. 378.) Chapter 691 of the Laws of 1868, providing for the compensation of highway commissioners in the county of Suffolk, at the rate of three dollars per day, was at the time of the trial of this action in full force and effect. (*In re Evergreen Cemetery*, 47 N. Y. 216; *In re Central Park*, 50 id. 493; *People* v. *Quigg*, 59 id. 83; *People* v. *Brinckerhoff*, 68 id. 259.)

PECKHAM, J. It seems to me to be too clear for argument that the contract between the town authorities and the water-works company obliges the latter to furnish water, in addition to erecting works, which would be comparatively valueless unless they were put to the use which their erection would imply. The obligation is just as binding upon the company, if it can be fairly implied from the language actually used in the contract, as if it were in so many words specifically mentioned therein. Within chapter 369 of the Laws of 1889, the contract was valid. The persons who signed the application to the town authorities, pursuant to the provisions of the act in relation to the creation of water-works companies in towns and villages, passed June, 1873, and the acts amendatory thereof, stated in writing their intention to supply the town and the inhabitants thereof with pure and wholesome water. The town authorities, in granting their official written consent to the application, recite therein the fact that the applicants

have organized for the purpose of forming a water-works com-
pany to supply the town and the inhabitants thereof with pure
and wholesome water, which they allege would be of great
advantage to the town and a great benefit to the inhabitants
thereof. The town authorities thereupon resolve "to grant
the said application, and the same is hereby granted."

After the incorporation of the company, and its organiza-
tion by the election of officers, the contract in question was
entered into. In it the company agrees to erect the water-
works and lay in the principal streets of the town twenty-
three miles of pipe of different named sizes, for the purpose
of supplying the town and its inhabitants with pure and whole-
some water in accordance with the grant of right of way to
lay pipes, etc., by the authorities. The limitation contained
in the contract is not to the use of the water by the town
authorities for any but fire purposes, but it applies to the fire
hydrants which were specially provided for to the number of
200, and they were only to be used for the extinguishment of
fires, and also for reasonable exhibitions and practice by the
fire department and companies of the town. The company
agreed to erect two pumps and to operate them, which should
be of standard manufacture and appropriate size, and each
having a capacity of pumping a million gallons in every
twenty-four hours. It was also provided that the rates for
private consumption should not exceed those of the Haver-
straw Water Company, a copy of which schedule was annexed
to the contract. This contract was executed in September,
1889, and under it the company proceeded with the work
therein provided for, and before September 19, 1890, had laid
over twenty-three miles of pipe, and had erected their water-
works and placed two hundred fire hydrants as directed, and
were furnishing to the town and the inhabitants thereof pure
and wholesome water, and on the day last mentioned the town
authorities stated these facts in writing and accepted and
approved the performance of the contract by the company.

Taking everything in the contract and the writings explana-
tory of its purpose, and its practical execution and construction

by the parties, and we have no hesitation in saying there was a binding contract to deliver pure and wholesome water to the town authorities and to the inhabitants up to a maximum amount (if required) of two million gallons every twenty-four hours.

The practical construction put upon a contract by the parties to it, is sometimes almost conclusive as to its meaning. (*Woolsey* v. *Funke*, 121 N. Y. 87, at 92; *Insurance Co.* v. *Dutcher*, 95 U. S. 269, 273.) The company has under this contract and relying upon it erected its works, laid its pipes, erected the fire hydrants and actually supplied the water to the town and inhabitants. The proof of the acceptance was objected to as having occurred subsequent to the commencement of the action, but there is evidently no doubt as to the facts which have occurred relating to the manner in which the contract has been carried out and its extent. We think the contract was, so far as this question is concerned, entirely valid.

The other objection is that the commissioners of highways who signed the contract upon the part of the town were, by its terms, to be paid by the company for their services in directing and supervising the laying of the pipes. I do not see that it is made their official duty by any statute to do this work. While there may be no unbending rule of law which positively prohibits under any contingencies such a provision, yet it is of so questionable a nature as to call for the most scrutinizing review of the result by the courts. Very slight evidence of an improper or unfair execution of duty by the commissioners, or of a failure to fully perform the contract by the company after the manner of the strictest construction of its requirements, would probably cause a court to find a fraudulent motive for the insertion of such a provision. The *onus* would be upon the company to show that the contract was just and fair, and had been by them justly and fairly carried out.

It might generally be difficult to prove such a condition of things, but in this case it is shown that there was no talk or

conversation as to the compensation to the commissioners until the terms of the contract had been fully agreed upon and written out, and the terms themselves were fair and just to both sides. Each commissioner swore he was in no way moved to the acceptance of the terms of the agreement by any question of compensation, and that subject did not arise until the whole matter as to the terms and conditions of the contract had been already fully agreed upon and settled.

The agreement for the supervising the laying of the pipes and for the compensation of the commissioners was probably made by the company, as the evidence would seem to indicate, upon the theory that if the manner of laying the pipes were approved, as the work progressed, by the town authorities, there would be no question afterwards as to whether the contract had been fairly carried out on the part of the company. Supervision being no part of the duty of the commissioners, the company was willing to pay them a fair compensation for their work. There is no proof that the supervision was not faithfully executed, and none that the contract was not in good faith carried out by the company both in letter and spirit.

Under these circumstances, while entirely disapproving the practice resorted to in this case, we do not feel that justice requires us to set aside this executory contract. The question of whether the compensation of a commissioner of highways in the town of Islip was $2 or $3 per day while engaged in the performance of his official duties, we think is immaterial. The company agreed orally to pay them $3 per day while engaged in supervising the manner in which the water-pipes were laid. As this was not an official duty, the question of the amount of difference between such agreed sum and the official compensation is irrelevant. The statute of 1886 (Chap. 452) does not make such supervision a part of the duty of the commissioners, and I am not aware of any statute that does. The last-named act makes provision as to the laying of the pipes so that public travel shall not be interrupted, etc., but there is no duty of supervision imposed upon the commissioners of highways during the progress of the work. As

there has been neither fraud nor illegality connected with this contract, we must uphold it.

The judgment dismissing the complaint should be affirmed, with costs.

All concur.

Judgment affirmed.