TANENBAUM v. FEDERAL MATCH CO.

(Supreme Court, Appellate Division, First Department. March 10, 1905.)

1. INSURANCE—BROKERS—RESCISSION OF CONTRACT.

Where an insurance brokerage contract bound the broker to keep his principal insured at a certain annual rate, and the broker contended, on the cancellation of a policy before the expiration of the year and the taking out of a new one, that he was entitled to additional commissions for a full year's insurance, and announced that he would insist on similar payments in case of future cancellations, the principal was entitled to treat the contract as abrogated.

2. SAME—BREACH OF CONTRACT—ACCRUAL OF ACTION.

Where an insurance brokerage contract bound the broker to keep the principal insured for a term of years on payment of certain annual commissions, and the principal paid the commissions for the first year, the fact that it asserted during that year that it would not make further payments under the contract did not put it in default so as to give the

broker an immediate right of action for the breach of the contract, but such action did not accrue until payments for the second year became due under the contract and were refused.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, §§ 1510, 1587.]

Ingraham, J., dissenting.

Action by Moses Tanenbaum against the Federal Match Company. The court directed a verdict for plaintiff, and defendant's exceptions to such ruling were ordered to be heard in the first instance in the appellate division. Exceptions sustained.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Ernest Hall, for plaintiff.
Dickinson W. Richards, for defendant.

McLAUGHLIN, J. This action was brought to recover liquidated damages specified in a contract between the parties upon the theory that the plaintiff had become entitled to the same by reason of defendant's failure to perform. The complaint alleged that on the 20th of September, 1900, the parties entered into a contract, a copy of which was annexed to and made a part of the complaint, by which the plaintiff agreed to procure for the defendant each year for a period of 10 years from the 10th of November, 1900, at least $50,000 fire insurance upon its property, in consideration of which the defendant agreed to pay him on demand the uniform rate of $4 per year for every $100 of insurance procured; that the plaintiff had fully performed on his part, and was ready and willing to continue to perform, the contract according to its terms for the full period therein specified, but that on or about the 1st of June, 1901, the defendant repudiated said contract, and refused to perform, by reason whereof plaintiff had become entitled to the liquidated damages provided for in the following provision of the contract:

"It is further specifically understood and agreed that if the said party of the second part shall, at any time during the period of this contract, sell or dispose of its business or discontinue business, or for any other reason shall not require or take insurance under its agreement as hereinbefore provided, the parties of the first part shall forthwith be entitled to recover from said party of the second part the sum of $500 for each year or portion of a year of the then unexpired term of said contract."

The defendant, by its answer, denied substantially all the material allegations of the complaint, and set up certain other defenses, which it is unnecessary to consider.

At the trial it appeared that after the contract went into effect plaintiff procured for the defendant $50,000 insurance for the first year, for which it paid him $2,000, viz., $4 on each $100; that within four or five months thereafter two of the policies thus procured, aggregating $7,500, were canceled at the instance of the companies issuing them; that thereupon plaintiff procured two other policies to take their place, and forwarded them to the defendant, with a demand for the further commission of 4 per cent., or $300; that upon receipt of the policies and the demand the president of the defendant immediately called up-

on the plaintiff, and, in effect, said to him that the contract did not call for such payment, and the defendant would not pay the bill. The plaintiff insisted that it should be paid, and that the contract provided he was entitled to receive 4 per cent. commission on each $100 insurance which he procured, and this irrespective of whether it was to take the place of previous insurance or not. This the defendant denied, and, in effect, said he would refuse to accept the policies, or further perform the contract, if it were to be thus construed. The defendant did not accept the policies, as evidenced by the fact that it immediately returned them to the companies issuing them for cancellation, and sent to the plaintiff the return premium received. The trial court at the conclusion of the trial directed a verdict in favor of the plaintiff for $4,708.33 damages, together with interest thereon from June 1, 1901, to the date of the trial, making in all $5,520.80, to which direction defendant excepted, and the exceptions were ordered to be heard in the first instance by the Appellate Division.

I am of the opinion that defendant's exceptions were well taken. Under the terms of the contract the plaintiff, according to our decision in action No. 1 between the same parties, decided herewith (92 N. Y. Supp. 683), was obligated to furnish to the defendant at least $50,000 insurance per year, and to keep the same good during the year; the defendant paying therefor on demand 4 per cent. commission, or $4 on each $100 insurance. The plaintiff furnished $50,000 insurance the first year, and the defendant paid him the $2,000 required. $7,500 of this insurance having been canceled by the companies issuing it, the plaintiff was bound to make the same good by procuring other insurance, without any further payment on the part of the defendant, and when he procured this insurance he had no right to insist, as a condition of his carrying out the contract, that further commissions be paid. He saw fit to make such demand, however, and, when remonstrated with that he had no right to do so under the terms of the contract, announced that he would not only insist upon defendant's paying the same, but would also insist upon a similar payment on each $100 of insurance thereafter procured, even though it cost defendant $100,000 a year to keep $50,000 insurance in force. The defendant was thus placed in a position of then either acquiescing in the construction which the plaintiff put upon the contract, or else, if the contract were to be so construed, repudiating it. It must be remembered the policies were delivered with a demand that the defendant pay an additional 4 per cent. commission on each $100 thereof. Under such circumstances, if the defendant had retained the policies, it might well be doubted whether it would not have been obligated to pay the additional amount claimed upon the ground that a practical construction had then been placed upon the contract by the parties to it. Nicoll v. Sands, 131 N. Y. 19–24, 29 N. E. 818; Woolsey v. Funke, 121 N. Y. 87, 24 N. E. 191; Insurance Co. v. Dutcher, 95 U. S. 269, at page 273 (24 L. Ed. 410). Plaintiff having taken this position, and having refused to recede therefrom, although requested to do so by the defendant, could not maintain an action to recover the liquidated damages specified in the contract, because his own act amounted to a breach of it on his part, which justified the defendant in refusing to further perform.

There is another view which it seems to me prevented a recovery by the plaintiff. As already indicated, plaintiff had received $2,000 for placing $50,000 insurance, which was the amount he was bound to keep good for one year. The contract so provides, and the defendant was not required to make any further payment until the expiration of the year, which was the 10th of November, 1901. This action was commenced several weeks prior thereto, and at a time when there was nothing due to the plaintiff under the contract. If our construction of the contract be correct, viz., that the defendant was only obligated to pay $4 on each $100 insurance procured, which the plaintiff was bound to keep in force for one year, then the defendant had performed the contract on its part, so far as required, until the 10th of November, 1901. The fact that it asserted on the 1st of June, 1901, that it would not make any further payments under the contract did not put it in default, and give plaintiff an immediate right of action—nothing then being due—any more than it would if plaintiff had held its promissory note, and defendant had said, in advance of the time it became due, that it would not pay it (Burtis v. Thompson, 42 N. Y. 246, 1 Am. Rep. 516); in other words, the plaintiff was not damaged until a payment under the contract was withheld after it became due. Until that happened, no legal right of the plaintiff had been violated, and by reason thereof he had sustained no damage. The action was commenced before that time.

I think the court erred in directing a verdict for the plaintiff, and that defendant's exceptions to such direction were well taken. If I am correct in this, then it follows that the exceptions must be sustained, and a new trial ordered, with costs to the defendant to abide the event. . All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. I dissent from the reversal of this judgment. I think, upon the conceded facts, that the defendant repudiated the contract, and refused further to comply with its provisions, and that thereby the plaintiff became entitled to recover. The fact that the plaintiff had made a claim for an incorrect construction of the contract as to policies issued in place of policies canceled did not justify the defendant in refusing to comply with the contract. I do not understand that the "defendant was thus placed in a position of then either acquiescing in the construction which the plaintiff put upon the contract, or else, if the contract were to be so construed, repudiating it." The defendant could insist upon his construction of the contract, leaving the plaintiff to recover, if he could, the price agreed to for the policies taken out in place of those that had been canceled; but such a claim by the plaintiff did not, as I view it, justify the defendant in repudiating the contract.

I think the judgment should be affirmed.