PORTER v. DENNY et al.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. COVENANTS ☞79—BUILDING RESTRICTION—CONSTRUCTION—PARTIES.

Where the grantor of part of a tract owned by him covenanted that neither he nor his heirs or assigns should erect on the remaining part any building the front walls of which should extend beyond the front line of the building which might be erected on the premises conveyed, limiting such restriction to four feet, the dominant estate was that of the grantee, and the whole of the remaining land was servient thereto, so that the subsequent owner of the eastern part of the lot so conveyed, was entitled to assert the restriction as against the grantees of lots in the remaining part, though some of such lots did not adjoin the dominant estate.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 79–82; Dec. Dig. ☞79.]

2. COVENANTS ☞79—BUILDING RESTRICTIONS—RIGHTS AS BETWEEN GRANTEES OF SERVIENT ESTATE.

In such case, where the restriction was given by the grantor to protect his grantee from buildings beyond a certain line on the grantor's remaining land, the restriction, while enforceable by the grantees of the grantee and covenantee against the grantor and covenantor, or his grantees, was not enforceable by the subsequent grantees in the servient estate.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 79–82; Dec. Dig. ☞79.]

3. COVENANTS ☞21—RESTRICTIONS—CONSTRUCTION BY PARTIES.

The practical construction of a contract, such as a restrictive building covenant, by uniform and unquestioned acts of the parties continued for a long time, is entitled to great, if not controlling, weight, as there is no surer way to find out what the parties meant than by observing what they have done.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 20; Dec. Dig. ☞21.]

Appeal from Trial Term, New York County.

Action by Lillian Ward Porter against Louise J. Denny and husband, and Oliver J. Wells and wife, brought under Code Civ. Proc. § 1638, etc., to determine claims to lands of the plaintiff. From certain parts of the judgment in favor of the plaintiff, defendants appeal. Judgment in favor of plaintiff reversed, and complaint dismissed as to defendant Denny, and judgment ordered for such defendant.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, DOWLING, and SMITH, JJ.

Coudert Bros., of New York City (Howard Thayer Kingsbury, of New York City, of counsel), for appellants Denny.

Wells & Snedeker, of New York City (H. H. Snedeker, of New York City, of counsel), for appellants Wells.

Bowers & Sands, of New York City (Middleton S. Borland, of New York City, of counsel, and Charles H. Edwards, of New York City, on the brief), for respondent.

CLARKE, J. The action was brought under the provisions of section 1638 et seq. of the Code of Civil Procedure to obtain an adjudication that the defendants have no claim against property owned by

the plaintiff, namely, 36 and 38 East Sixty-Second street in the borough of Manhattan, by reason of a certain restriction or so-called setback covenant contained in an agreement made by one Henry A. Cram to one Charles Buek dated May 9, 1880. The defendant Louise J. Denny is the owner of premises No. 32 East Sixty-Second street, and the defendant Thomas Denny is her husband. The defendant Oliver J. Wells is the owner of the premises No. 34 East Sixty-Second street, and the defendant Josephine L. Wells is his wife.

The defendants Wells in their answer pray that the court determine the rights of the other defendants against their premises No. 34 and the rights of these defendants against each of the other parties to this action and against the premises in which they are severally interested so far as concerns said building line.

The defendants Denny in their answer demand judgment that the complaint be dismissed, with costs, and that the court determine that the said agreement affects, relates to, restricts, and limits the premises of the plaintiff and of the defendant Wells, being Nos. 34, 36, and 38, and that the defendant Denny is the owner of the easement created by said agreement and is entitled to compel the observance of the terms and provisions of said agreement by the plaintiff and the defendant Wells, and that such easement is appurtenant to the ownership of 32 East Sixty-Second street and binds premises Nos. 34, 36, and 38 East Sixty-Second street in whosesoever ownership they may be.

The following diagram shows the various properties referred to in the complaint with the names of the owners thereon:

The property outlined within the double lines on this diagram was the property conveyed by Henry A. Cram to Charles Buek.

In 1880, Henry A. Cram owned all the property constituting the north half of the block between East Sixty-First and East Sixty-Second streets extending from Madison to Park avenues. This was unimproved at the time. On April 20, 1880, he entered into a written contract with Charles Buek in which he agreed to convey to him all the parcel at the southeasterly corner of Madison avenue and Sixty-Second street, bounded by the avenue and Sixty-Second street and the

center line of the block and extending 107 feet in depth on Sixty-Second street. This parcel on the diagram is inclosed with double lines. The contract provided:

"The title to be good and to be free and clear of all liens and incumbrances of every nature and description excepting only the usual covenant against nuisances being erected on the premises aforesaid—and the party of the first part hereby agrees to execute a separate agreement containing the same covenant against erecting any nuisance on the lot adjoining on the east and a further covenant against erecting any building the front walls of which shall extend out beyond the front line of the buildings which may be erected on the above described premises by the party of the second part."

And then followed these words, which, before signature, were stricken out: "Until the party of the second part shall have sold the premises erected by him." And the erasure was initialed by Mr. Cram's son, John Sergeant Cram, who was as well his attorney.

The contract of sale proceeded:

"This restriction to be limited to four feet. Possession of said premises to be given simultaneously with the execution and delivery hereof. And it is understood that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators and assigns of the respective parties."

Buek took possession at once and began the excavation on the Madison avenue corner. Before the deed had passed, plans had been drawn for his development of the property. On the 18th of May, Cram and his wife executed a warranty deed of said premises and simultaneously therewith delivered an agreement, the two instruments being recorded at the same time, May 28, A. D. 1880, in Liber 542 of Conveyances, p. 394. The agreement between Cram and Buek provides:

"That the said party of the first part is the owner in fee of a plot of land (the 'p' is stricken out by pen mark, making it 'lot of land') on the southerly side of Sixty-Second street, * * * and the party of the second part, the owner in fee of the plot immediately adjoining on the west said first mentioned plot which said last mentioned plot is bounded as follows: (Describing it.)

"Now, therefore, in consideration of the sum of one dollar, lawful money of the United States of America in hand paid by the said party of the second part to the said party of the first part the receipt whereof is hereby acknowledged the said party of the first part covenants and agrees to and with the said party of the second part, his heirs, executors and administrators, that he, the said party of the first part, his heirs and assigns will not erect or cause or permit to be erected at any time hereafter on the lot adjoining the said premises of the party of the second part on the east any building within forty feet of the front of said lot except of brick or stone, with roofs of slate or metal, and they will not erect or permit upon any part of the said lot any stable. (Then follows the ordinary covenant against nuisances.)

"And the said party of the first part for himself, his heirs and assigns doth further covenant and agree to and with the said party of the second part, his heirs, executors and administrators, that neither the said party of the first part, nor his heirs or assigns shall or will erect or cause or permit to be erected on said lot, any building the front walls of which shall extend out beyond the front line of the building which may be erected on the above described premises of the party of the second part (and then the words stricken out, 'until the party of the second part shall have sold the premises erected by him.' Then it proceeds.)

"This restriction to be limited to four feet."

There was a further agreement made on the 28th day of May, 1880, and recorded on the same day for a party wall, which contained the following:

"Whereas the said party of the first part (that is Buek) is proceeding to improve this said plot of land by the erection of dwelling houses thereon one of which is to front on said Sixty-Second street and to adjoin on the west the said other vacant plot of land belonging to the said party of the second part (that is Cram) upon which he or his assigns may at some future time erect a building, * * * it is hereby mutually covenanted and agreed by and between the respective parties hereto that the easterly side wall of the house so to be erected by the said party of the first part shall be placed and erected so that the center line of said wall shall coincide with the division line between said lots and shall there be and remain forever as a party wall between the aforesaid messuages for the joint use of the owners of the said parcels of land respectively." With the right to either party "to extend the said party wall in height and also in depth to the center line of said block, if desired. * * * Nothing herein contained shall be deemed taken or construed to authorize or permit either party to extend the said party wall in front on Sixty-Second street beyond the line of the buildings now being erected thereon by the party of the first part."

Buek laid out the plot so bought from Cram into six lots, and erected dwellings thereon, four of them facing on Madison avenue, the southerly one being 86 feet in depth and the three others 63 feet in depth, and two lots on Sixty-Second street, No. 30, having a frontage of 23 feet and a depth of 82 feet 6 inches, and No. 32 having a frontage of 21 feet and 100.5 feet depth. The building on the corner of Madison avenue and Sixty-Second street, 689 Madison avenue, had its street side or north wall coincident with the building line of Sixty-Second street, but the buildings erected and now known as 30 and 32 were set back 4 feet from the building line. These were private houses, four stories high, with brown stone fronts. The defendant Mrs. Denny owns 32, the easternmost of the houses erected by Buek, having acquired title from Mrs. Bangs by deed dated June 5, 1902, in which deed it was expressly recited that said conveyance was "subject nevertheless to any existing covenants and restrictions as to buildings and against nuisances and party wall agreement affecting the above described premises, or any part thereof." About a year after the sale to Buek, Cram sold the 60 feet next to the east, being the land now occupied by Nos. 34, 36, and 38, each of these lots being 20x100.5' in depth. The parcel now known as No. 34 was conveyed to one Bussell by deed from Cram dated June 14, 1881, the westerly wall being 107 feet east of Madison avenue:

"Subject to a party wall agreement on the westerly side thereof with Charles Buek; also subject to a covenant against nuisances and with respect to buildings contained in two agreements with said Charles Buek recorded in Liber 1542 of Conveyances, pages 394 and 397."

The parcel No. 36 was conveyed to one Wray by Cram by deed dated June 14, 1881, the deed containing the following:

"Subject to the covenant against nuisances and with respect to buildings contained in an agreement with Charles Buek recorded in Liber 1542 of Conveyances on page 394."

The lot now No. 38 was conveyed to Bussell and Wray as tenants in common by deed of Cram dated June 14, 1881. This deed did not contain the reference to the setback agreement.

On the same day, 14th of June, 1881, Bussell and Wray, as parties of the first part, and Cram, as party of the second part, entered into an agreement, which provided:

"Whereas the said parties of the first part are the owners in fee of a plot of land situate on the south side of Sixty-Second street beginning at a point one hundred and seven feet easterly of the southeasterly corner of Madison avenue and Sixty-Second street being sixty feet on Sixty-Second street and the center line of the block and one hundred feet and five inches in depth. And whereas the party of the second part is also the owner in fee of another vacant plot of land fronting on Sixty-Second street and adjoining on the east the plot of land above described, the dividing line between the said two plots of land being the line running from the southerly side of Sixty-Second street to the said center line of the block at the distance of one hundred and seven feet easterly from and parallel with Madison avenue aforesaid. And whereas said parties of the first part are proceeding to improve said plot of land by the erection of dwelling houses thereon adjoining on the west the said other vacant plot of land belonging to the said party of the second part upon which he or his assigns may at some future time erect a building. And whereas the respective parties hereto have agreed that the division wall between their respective parcels of land shall be a party wall for their mutual use to be erected and paid for in the manner hereinafter provided: * * * It is hereby mutually covenanted and agreed by and between the respective parties hereto that the easterly wall of the house so to be erected by the party of the first part shall be placed and erected so that the center line of said wall shall coincide with the division line between said lots and then be and remain forever as a party wall between the aforesaid messuages. * * * And it is further agreed that either of the parties hereto shall at any time hereafter have the right at his own cost and expense to extend the said party wall in height and also in depth to the center line of the block if desired. * * * Nothing herein contained shall be deemed taken or construed to authorize or permit either party to extend the said party wall in front on Sixty-Second street beyond the line of the buildings to be erected thereon by the said party of the first part."

Bussell and Wray immediately improved the 60 feet thus acquired by building thereon the three houses, 34, 36, and 38, being of the same general size, style, and materials as 30 and 32 and having their front walls on the same line, thus making a row of five houses substantially uniform in general appearance and exactly uniform in the distance of their front walls from the building line. These houses passed by mesne conveyances, No. 34 to the defendant Wells, and Nos. 36 and 38 to plaintiff Mrs. Porter. Both of her deeds are expressly subject to the agreement of 1880 between Cram and Buek. She acquired title in 1902 and went to live in No. 36 The Porters called the attention of the Dennys to No. 32, and before title was taken Col. Denny discussed the question of the setback agreement with Mr. Porter, who assured him that he had no intention or desire to build out in front of his house. Subsequently he asked permission to do so, and there was a question of pecuniary consideration between them, and Col. Denny declined to give the permission, and the Porters acquiesced. It appears, also, that Mr. Wells, who owned No. 34, also asked similar permission with like result, and he also acquiesced, and Wells and the Porters built their extensions in the rear.

The learned court decided that the agreement does not affect or restrict any of the property except the lot of land with dwelling house thereon known as 34 East Sixty-Second street owned by Mr. Wells, which is the 20 foot lot, being the westerly 20 feet of the 60 feet remaining in Cram after he had conveyed to Buek; that no negative restrictive easement exists in favor of the premises Nos. 30, 32, and 34 or any of them, or the owners thereof as against Nos. 36 and 38, the property of the plaintiff; that the claims of the defendants Denny and of the defendants Wells in the lands and premises of the plaintiff 36 and 38 is unjust; and that the plaintiff is entitled to judgment to the effect that the defendants be forever barred from all claim to any estate and from all claim to any interest or easement in or lien or incumbrance upon the premises of the plaintiff 36 and 38 of any nature or kind whatsoever.

The Wellses, while acquiescing in the finding that their property is subject to the restriction, claim that they have rights, by reason thereof, as against the property of Mrs. Denny on their left and the Porters on their right, and appeal, as does Mrs. Denny, who claims that she has rights by reason of the restriction against not only the property of Mr. Wells next to her, but that of the Porters owning 36 and 38 as well.

In my opinion the whole plot of 60 feet remaining in Cram after his conveyance to Buek is subject to the restriction:

"That neither he nor his heirs or assigns shall or will erect or cause or permit to be erected on said lot (meaning the whole lot) any building the front walls of which shall extend beyond the front line of the building which may be erected on the above-described premises of the party of the second part. This restriction to be limited to four feet."

The dominant estate was that of Buek. The rest of the plot was servient thereto. So long as the building on the dominant estate is set back four feet, the owners thereof have the right to insist that the buildings on the other three parcels, part of the 60 feet referred to, shall not be extended beyond that front. In view of the whole history of this transaction, and the various papers recorded, I do not believe this restriction was limited to the Wells property, the 20-foot lot carved out of the 60 feet after the conveyance to Buek. The agreement was a personal covenant given by Cram to Buek to induce him to purchase and develop the property. Mr. Cram tried to limit the restriction to the period of Buek's ownership, but Buek refused to accede to this limitation, and it was stricken out of the contract to purchase and the restriction agreement itself. The restriction was interpreted contemporaneously to control all of the property. Cram conveyed the other lots subject to the agreement and made two party wall agreements consistent therewith. The houses were promptly built in conformity therewith, and for 30 years the restriction has been respected.

"There is no surer way to find out what parties meant, than to see what they have done." Insurance Co. v. Dutcher, 95 U. S. 269, 273, 24 L. Ed. 410, cited with approval in Nicoll v. Sands, 131 N. Y. 24, 29 N. E. 818.

"Practical construction by uniform and unquestioned acts from the outset, especially when continued for a long period of time, is entitled to great, if

not controlling, weight, for it shows how the parties who made the contract understood it. If they do not know what they meant, who can know? Such a construction is presumed to be right, because it was made by the parties themselves when under the influence of conflicting interests.   *   *   *   As we recently said: 'When the parties to a contract of doubtful meaning, guided by self-interest, enforce it for a long time by consistent and uniform course of conduct, so as to give it a practical meaning, the courts will treat it as having that meaning, even if as an original proposition they might have given it a different one.'  City of New York v. New York City Ry. Co., 193 N. Y. 543, 548 [86 N. E. 565]."  Carthage T. P. Mills v. Vil. of Carthage, 200 N. Y. 1–14, 93 N. E. 60.

It follows that the judgment against Mrs. Denny is erroneous. She as the owner of lot 32, the easterly lot of the plot conveyed to Buek, is entitled to assert and maintain as against the property of the plaintiff the restrictive covenant running with her land, and the decision that her claim is unjust is not only not supported by the evidence, but is contrary thereto. As between the plaintiff and the defendant Wells, however, I do not think there are any mutual rights. The covenant while running with the land was personal to Buek, his heirs and assigns. It was for the protection of his property. It depended upon the establishment by him of the fronts of his houses. It was not to erect beyond the front line of the building which may be erected on the above-described premises of the party of the second part. It might be put an end to at any time by the owner of that property building out to the building line.

Mrs. Denny's property is therefore the dominant tenement. The plaintiff's and the Wells property are servient tenements. In Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687, 37 L. R. A. (N. S.) 1, 127 Am. St. Rep. 925, in considering restrictive covenants the court divided them into three classes, and said:

"The second class embraces those cases in which the grantor exacts the covenant from his grantee, presumptively or actually, for the benefit and protection of contiguous or neighboring lands which the former retains. In such cases the grantees, if there are more than one, cannot enforce the covenant as against each other, although the grantor, and his assigns of the property benefited, may enforce it against either or all of the grantees of the property burdened with the covenant."

In the case at bar the covenant was given by the grantor to protect his grantee Buek from erections on the plot remaining in the grantor of buildings beyond the setback line. It seems to me that there is no difference in principle whether the covenant was made by the grantee to the grantor to protect his property, or by the grantor to the grantee to protect the latter's. This proposition has been well expressed in a note in 37 L. R. A. (N. S.) 12, at page 23, where it is said:

"Another, but much rarer, class of cases in which restrictive covenants may be enforced by persons not parties thereto is that in which a vendor, instead of imposing the burden on the property sold for the benefit of that retained, reverses the servitude, laying the restriction on the land retained for the benefit of the land sold. It would seem that the same reasoning ought to apply as well in the one case as the other, and that the rule should here be that such restrictions may be enforced by the grantees of the covenantee against the covenantor or his grantees, but that an action may not be maintained to enforce the restriction between grantees of the servient estate."

It should be borne in mind that this is not an action brought by Mrs. Denny to enforce the covenant in equity, nor is it an action at law by her to recover damages for breach thereof. There is also no question of neighborhood changes which would make the enforcement of the covenant inequitable. The condition existing has continued for upwards of 30 years with the acquiescence of all parties. Now the plaintiff asks the court to declare that the restrictive covenant does not affect her property.

There is some doubt whether such right based upon a personal covenant is properly the subject of an action under section 1638 of the Code, but that question has not been raised or argued before us, and all of the parties have submitted their respective claims and in their pleadings prayed for the judgment which they think they are entitled to. We therefore decide the case as it is presented to us. The judgment in favor of the plaintiff should be reversed, and the complaint dismissed as to the defendant Denny, and judgment directed for her in accordance with this opinion. Many of the findings must be reversed, and new findings made, the decision embodying which will be settled on notice. Costs and disbursements to the appellants Denny. Settle order on notice. All concur.