### SNYDER v. SEAMAN.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

PARTNERSHIP CONTRACTS—UNCERTAINTY—CONSTRUCTION.

Where it is uncertain, from the terms of a copartnership agreement, whether personal taxes of one of the partners should be charged to the firm's expense account, the actual construction adopted by the partners through a number of years will be considered as giving a proper construction to the agreement.

Appeal from judgment on report of referee.

Action by James H. Snyder against Lloyd I. Seaman for an accounting. From a judgment in favor of the plaintiff, defendant appeals. Reversed.

The action was brought for an accounting between copartners, the plaintiff claiming that certain personal taxes of defendant had been improperly paid with copartnership moneys, and charged to business expenses, in arriving at the net profits or earnings of the copartnership, which were to be divided between the copartners. The first copartnership agreement was made May 1, 1885. Prior to that time the defendant had carried on the business as an individual, and plaintiff had been in his employ in the business from August, 1871, until the agreement of May 1, 1885, was made. By the terms of that agreement the copartnership was to commence at its date, and to continue for three years; defendant was to contribute as capital $45,000, and plaintiff $5,000, and interest was to be paid half-yearly to each on the capital contributed, at 6 per cent.; and the defendant was entitled to two equal third parts of the net profits of the business, and the plaintiff to the remaining equal third part thereof, and all losses sustained in the business were to be borne and paid by the parties in the same proportion. The character of the business was butter and cheese commission business. Books of account were to be kept open at all times to the inspection of each of the partners, in which all the business dealings of the copartnership should be correctly and truly entered. May 1, 1886, a change in the terms of the copartnership agreement was made, for the balance of the term, respecting the division of the net earnings. In place of the defendant being entitled to two equal thirds, and the plaintiff to the remaining one equal third, the net earnings thereafter were to be divided equally; each receiving one-half thereof, and each sharing one-half the losses thereof. Both of these agreements were in writing. The copartnership continued beyond the term of three years, and until April 30, 1892, under the agreement as modified, and then was dissolved by mutual consent. During the continuance of the copartnership, personal taxes of the defendant assessed by the city of New York were paid with the copartnership moneys, and charged in the books to business expenses, viz.: In 1885, $180; in 1886, $171.75; in 1887, $165; in 1888, $166.50; in 1889, $146.25; in 1890, $197; and in 1891, $190. The referee held that these taxes were improperly charged; that the plaintiff was entitled to recover his one-third thereof for the year 1885, and one-half thereof for the balance of the years, with interest,—and ordered judgment accordingly. From the judgment entered upon the referee's report, this appeal is taken.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTER-
SON, O'BRIEN, and INGRAHAM, JJ.

John W. Weed, for appellant.
Herbert M. Lloyd, for respondent.

WILLIAMS, J. The referee evidently based his decision upon the
language of the agreements alone, without taking into consideration
the evidence offered bearing upon the construction or meaning given
to the language by the parties to the agreement. In the absence of
such evidence, and construing the language of the agreement without
the aid of such evidence, the conclusion of the referee would undoubt-
edly have been correct. In the ordinary meaning of the term "net
profits" or "net earnings" of the business, these personal taxes of the
defendant, which were not shown to have been assessed solely upon
his share of the capital invested in the business, would not have been
properly chargeable as expenses of the business. We are of opinion,
however, that the parties have by their acts given a practical construc-
tion to the agreements, in accordance with the defendant's claim that
these taxes were to be regarded as a part of the expenses of the busi-
ness, for the purpose of arriving at the net profits or earnings of the
business. These two words, "profits" and "earnings," were clearly
used by the parties in these agreements as synonymous terms. The
word "profits" alone was used in the agreement of May 1, 1885; and
when they came to make the modification of the contract, May 1,
1886, the language used was:

"We agree to change its terms relating to the net earnings. In place of
Seaman being entitled to two-thirds, and Snyder one-third, the net earnings
shall hereafter be divided equally."

This language conclusively shows they understood "earnings" and
"profits" were the same thing. In the modification they spoke of
"earnings" as though that had been the word used in the original
agreement, when no such word had there been used, but only the
word "profits." This shows they understood the words to mean the
same thing. They so used them in these agreements, at least. The
evidence to which we have referred established the following facts:
The plaintiff was in defendant's employ from 1871 until the first
agreement was made, May 1, 1885; and from about 1877 the plaintiff
was paid for his services by a certain fixed salary, and, in addition,
a percentage of the net profits or earnings of the business. Plaintiff
was bookkeeper until 1881, and from that time until 1885 was sales-
man, but remained familiar with the books. During all the time
plaintiff was receiving a percentage of the net profits or earnings, and
up to the time the copartnership was formed the defendant's personal
taxes were entered in the books of the business as expenses of the
business, as plaintiff well knew. At the time the copartnership was
formed, defendant told plaintiff he would give him a one-third inter-
est, and this was the only change they would make in the business.
This evidence was stricken out, upon motion of plaintiff, and defend-
ant excepted. After the copartnership was formed the plaintiff kept
a supervision over the books, and with his knowledge, and without

objection from him, the personal taxes of defendant were continued to be charged as a part of the business expenses during the whole existence of the copartnership. Plaintiff raised no question in regard to such charges until 1891. He was present at the time the annual accounts of the copartnership were cast up for the purpose of determining the net profits, and when the balances were struck; and there was carried to his account so much of his undrawn profits, so arrived at, as appeared to his credit on the books, and this continued during all the years the copartnership existed. Soon after the copartnership was formed, defendant went to Europe, and was away for more than a year. While he was away his taxes were paid by checks drawn by the plaintiff himself. This occurred as to two years' taxes,—1886 and 1887,—and the amounts were charged in the copartnership books to business expenses. In the fall of 1889, plaintiff first charged his own personal taxes to the account of business expenses on the copartnership books, and similar charges were made in 1890 and 1891. No question as to those taxes had ever arisen before 1889. At some time after the charges were made the defendant objected to them, and these taxes were thereupon charged back to the plaintiff. In the year 1891, after the yearly balance had been struck, the plaintiff protested against defendant's personal taxes being charged to business expenses, and subsequently, at some time, the defendant insisted upon their so remaining; and the plaintiff made no further objection until the dissolution of the copartnership, about the 1st of May, 1892. The balance was struck at the time of the dissolution, as it had been before, with these taxes in the account; and plaintiff accepted the balance coming to him as so ascertained, though protesting against the charges for defendant's personal taxes. This action was not commenced until August, 1893. In Insurance Co. v. Dutcher, 95 U. S. 273, the policy of insurance declared that the amount of the paid-up policy should be determined by the sum of the premiums paid in cash. It appeared in the case that the insurance company always issued paid-up policies upon the basis of the full amount of premiums paid, making no distinction between the notes and the money received by the company for the premiums. The words "paid in cash" were construed by the court to cover, not only premiums for which cash had actually been paid, but those, also, for which notes had been given. In this connection the court said:

"The practical interpretation of an agreement by a party to it is always a consideration of great weight. The construction of a contract is as much a part of it as anything else. There is no surer way to find out what parties meant than to see what they have done. Self-interest stimulates the mind to activity, and sharpens its perspicacity. Parties in such cases often claim more, but rarely less, than they are entitled to. Probabilities are largely in the direction of the former. In considering the question before us, it is difficult to resist the cogency of this uniform practice during the period mentioned, as a factor in the case."

In Woolsey v. Funke, 121 N. Y. 87, 24 N. E. 191, the court was considering the construction of a charter party which provided that the plaintiffs should furnish the vessel, at their own expense, with all the supplies required, except water, the cost of which the defendant was to pay. It was claimed by the defendant that under this

charter party the plaintiffs were bound to furnish the water, and, not having done so, had broken the contract, and were not, therefore, entitled to recover certain damages claimed.    The court held otherwise; among other things saying that, if they were not right in the interpretation of the language of the charter party, it must at least be admitted that the language was somewhat ambiguous or indefinite, and under such circumstances the practical interpretation of the charter party by both parties was a consideration of great importance,—citing, with approval, Insurance Co. v. Dutcher, above.    And in Nicoll v. Sands, 131 N. Y. 19, 24, 29 N. E. 818, this same doctrine was approved; citing Woolsey v. Funke and Insurance Co. v. Dutcher, above.    In Story on Partnership (Gray's Ed. §§ 191, 192, and notes), it is said:

"In all cases of doubtful interpretation, the actual construction adopted by the partners in their partnership transactions will be, and, indeed, ought to be, adopted, as the true, legitimate, and appropriate interpretation intended by themselves.    Entries in the books of a partnership have been said to be as conclusive of the rights of the partners as if prescribed in the regular contract.    Partnership articles, in the view of courts of equity, whatever may be the rule of law, are liable to be controlled, superseded, qualified, or waived by the acts and transactions of the partnership in the course of the business thereof, wherever the assent of all the partners thereto may be fairly inferred, and however positive or stringent those provisions may be.    Partners, if they propose, may, in the course of the partnership, daily come to a new arrangement, for the purpose of making some addition or alteration in the terms on which they carry on business, provided those additions or alterations be made with the unanimous concurrence of all the partners.    In short, in many cases of this kind, looking to the course of conduct of the partners, and the special circumstances of their business, or to their general acquiescence or their positive acts, we may often have the most satisfactory evidence that the partnership articles have been laid aside, either pro tanto or in the whole, and that new articles and arrangements have been entered into in their stead."

It seems to us that the evidence in question, under the circumstances, is not to be considered for the purpose of varying the terms of the written agreements, but rather as giving a proper construction to the agreements, and the words "net earnings" or "profits," as therein contained.    These words, as used in these agreements, may be considered as so ambiguous and uncertain as that evidence may be given of the conversation between the parties at the time the agreements were made, and the acts of the parties in the conduct of the copartnership, to show what the parties intended by the use of those words in the agreements.    Whether we are to give this effect to the evidence, and construe the language of the contracts accordingly, or whether we are to regard the agreements as modified, in view of the evidence, in either event the rights of the parties are to be determined by regarding the personal taxes of the defendant as properly part of the expenses of the business.

We therefore conclude that the decision of the referee was erroneous, and that the judgment should be reversed; and we think, under the circumstances, that judgment should be entered for the defendant, with costs of appeal and costs of the court below.    All concur.