Jones, Chief Judge,
delivered the opinion of the court:
Plaintiff contractor brings this suit to recover the difference between the cost of steel drums which it alleges it was authorized to use under the terms of its supplies contract and the cost of more expensive drums which the plaintiff used when advised by the Air Force that the less expensive drums did not comply with the contract specifications. In support of their motions for summary judgment, the parties have submitted affidavits and exhibits. These documents, along with the pleadings and briefs, provide the basis for our decision.
On May 14, 1954, the Topeka Air Force Depot, United States Air Force, awarded plaintiff a fixed price contract, calling for the delivery, inter alia, of stated quantities of aircraft cleaning compound. Deliveries of the product were made under the contract during the months of August and September, 1954, in reconditioned drums which were embossed with an ICC stamp.
However, on September 13, 1954, plaintiff wrote the contracting officer requesting permission to use so-called “Rule 40” drums, i. e., reconditioned drums acceptable to the railroads under Rule 40 of Consolidated Freight Classification No. 20. By way of explanation plaintiff stated that a shortage of reconditioned ICC drums had developed in the Kansas City area where the subcontracting work was being performed, and as a result delivery of the cleaning compound was being hampered. This difficulty could be avoided, according to plaintiff, if it were permitted to use “Rule 40” drums, which were readily available, in completing the balance of its contract. It was plaintiff’s interpretation of the contract that “Rule '40” drums were acceptable since they conformed to the drum reconditioning requirements (MIL-R-3567A) of the contract.
*601 In a letter dated September 22, 1954, the contracting officer informed plaintiff that “Rule 40” drums would not be acceptable, even though they might have complied with Specification MIL-R-3567A, inasmuch as they did not meet the basic drum specification (JAN-P-110) of the contract, as did the ICC drums. Plaintiff replied on October 15, 1954, by reiterating its position that any drum may be furnished provided it meets the requirements of MIL-R-3567A, and asserted that the cleaning compound was non-hazardous and therefore need not be delivered in ICC drums.
By letter dated October 25, 1954, the contracting officer again stated his position that all drums must conform to the requirements of JAN-P-110 and that “Rule 40” drums did not so conform and were unacceptable. The contracting officer was thereafter advised by letter on November 15,1954, that .plaintiff would complete the contract using reconditioned ICC drums but would claim the difference in cost between the reconditioned ICC drum and the reconditioned “Rule 40” drum.
On November 22,1954, the contracting officer in a written communication entered formal findings and made a decision disallowing plaintiff’s requested use of “Rule 40” drums. Plaintiff appealed and a hearing was conducted before the Armed Services Board of Contract Appeals. On September 16,1955, an opinion was delivered in which plaintiff’s appeal was denied. A motion by plaintiff for rehearing and reconsideration was also denied. In seeking the difference between the price of the ICC drums actually used and the price of “Rule 4Ó” drums it was not allowed to use, plaintiff alleges arbitrary and capricious action in the ruling by the contracting officer.
Initially, it should.be indicated that the product giving rise to this dispute is described in Item No. 2 of the supply contract as:
7300-190100 Compound cleaning aircraft Spec 20015E dtd 23 Feb 49 — 55 gal drum.
Item No. 8 of the contract, relating to packing and marking requirements, provides in part as follows:
*602 PACKING AND MARKING:
The requirements set forth below shall apply to any contract issued hereon, and supersede any conditions inconsistent herewith. All specifications referenced below shall be of the issue in effect on the date of this Invitation For Bids.
a. Unit containers shall be of the following type:
m * * *
(2) Fifty-five (55) gallon metal drums 18 Gage conforming to the requirements of Specification JAN-P-110, applicable to Item 2.
(3) Others as follows: Reconditioned drums are acceptable, if they meet all requirements of MIL-R-3567A.
It is plaintiff’s contention that item 8 a (3) of the contract is not an adjunct nor part of item 8 a (2). Consequently, plaintiff argues, reconditioned drums are acceptable under the contract if they conform to the requirements of MIL-R-3567A. Whether the drums would qualify under Specification JAN-P-110 is immaterial, according to this interpretation. Absent other provisions in the contract and the interpretative acts of the parties under the agreement prior to the time this dispute materialized, we would be inclined to favor plaintiff’s argument. However, careful examination of other related provisions of the contract, and consideration of the practical interpretation attached to it by the parties, demonstrate the unreasonableness of plaintiff’s position.
Section 5.2 of Specification 20015E, which is incorporated into the contract under item 2 provides:
Packaging. — The compound shall be furnished in containers of the size specified by the Procuring Agency. The containers shall be steel and shall conform to Specifications JAN-P-110 or JAN-P-124 and the applicable Interstate Commerce Commission Regulations.
Specification JAN-P-110, incorporated into the contract by item 8 a (2) of the contract and Specification 20015E, provides the Joint Army-Navy specifications for 55-gallon metal drums for packaging and packing for overseas shipment. These specifications set forth requirements as to the type of steel; the enamel coating; the acceptable type of gaskets; the *603 capacity; the weight and thickness of the sheets of steel; the requirements concerning seams, heads, rolling hoops, closures, and linings; and the provisions for sampling, inspection, and tests. Item E5 Specification JAN-P-110 also provides as follows:
E-5. 7. O. O. regulations. — In addition to the requirements of this specification, drums shall conform to the requirements of the Interstate Commerce Commission Regulations.[1]
On the other hand, “Rule 40” drums need only be of 18-gauge steel and have welded seams. Rule 40 does not set forth specifications for the materials, finish, dimensions, hoops, gaskets, closures or any of the other requirements or tests prescribed in JAN-P-110. Furthermore, “Rule 40” drums do not have the “ICC” stamp embossed on them, thereby eliminating a convenient quality control factor which is important in the final acceptance of the drums and thus impeding the Government contracting officer in determining whether the contract specifications have been complied with. And by its very terms, Specification MIL-R-3567A would also seem to indicate that only JAN-P-110 drums will be acceptable if they have been reconditioned under the specification. For section 6 provides in pertinent part:
6.1 Ordering data. — Procurement documents should specify the following:
(a) * * *
(b) Which item is to be reconditioned.
Since JAN-P-110 drums are required under item 8 a (2) of the procurement document, it appears to follow that only they are acceptable if properly reconditioned.
To plaintiff’s argument that the cleaning compound was non-hazardous and therefore “Rule 40” drums were allowable under the contract, it is to be pointed out that the Government was not only purchasing the cleaning compound, but *604 also the containers. Item No. 2j of the contract provides in part:
Cost of containers to be included in the unit price and to remain the property of the U. S. A. F.
And. if the Government contracts for a particular type of drum, the contractor cannot substitute materials that are adequate for a particular limited purpose, but must give what the specifications call for. Farwell v. United States, 137 C. Cls. 832.
Not only does the contract as a whole give credence to defendant’s interpretation of the intent of the parties at the time of the agreement, but so too does the conduct of the parties rendering performance under the contract. See Insurance Co. v. Dutcher, 95 U. S. 269. Plaintiff apparently understood the contract to require ICC drums for it made 6 separate deliveries in such drums before it requested permission to substitute “Hule 40” drums. If plaintiff had believed it was allowed to deliver the compound in “Rule 40” drums, less expensive than ICC drums, it surely would have done so when performance began.
Being of the opinion that the ruling by the contracting officer was not arbitrary and capricious, plaintiff’s motion for summary judgment is denied. Defendant’s motion is granted and plaintiff’s petition is dismissed.
It is so ordered.
Madden, Judge; and Littleton, Judge, concur.
Laramoke, Judge, and Whitaker, Judge, took no part in the consideration and decision of this case.

 The requirement that the drums conform to the Interstate Commerce Commission Regulations, such specifications being almost identical to those of JAN-P-110, did little more than impose the requirement of the ICC stamp on the drums. However, the presence of the stamp on the drums was essential to quality control since it attested to the suitability of such drums for certain types of shipment and storage, requirements for which less expensive drums frequently could not qualify.