NEWPORT WATER WORKS *vs.* JOHN M. TAYLOR, City Treasurer.

JULY 6, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst and Sweetland, JJ.

*(1)   Construction of Contracts.*

In the construction of contracts, the intention of the parties must govern when it can be clearly inferred from the terms of the contract and can be fairly carried out consistently with the settled rules of law.

Words are to be construed according to their natural meaning, unless such a construction would either render them senseless, or would be opposed to the general scope and intent of the instrument, or unless there be some very cogent reason of convenience in favor of a different interpretation.

*(2)  Contracts.   Construction.*

A contract between a city and a water company provided that the company should furnish the city with water for its use for the public buildings and many specified purposes, including "fourteen spring drinking fountains of ordinary capacity and one constantly running fountain on Washington Square," at an agreed price, and that water in addition to what was designated should be allowed at stipulated rates, including among other purposes, "spring fountains of the kind above mentioned at $25 a year each." Said rates were to continue until the price to be paid by the city should be equal to $10,000 a year in all, and then the city was to pay only at said last mentioned rate, and all additional or greater use of the water should be free.   "Said fountain on Washington Square shall be of capacity of at least equal to that of the fountain now in operation there.   The other fountains shall be located by said city at its pleasure."

The city council passed a resolution authorizing the erection of three fountains similar to that on Washington Square, and for several years the city paid for their use at the rate of $100 a year each, in addition to the sum of $10,000, and after a period of four years during which no payment was made for the fountains, upon claim made therefor by the water company appropriated the amount necessary for the payment of such claim:—

*Held*, that upon the terms of the contract considered with reference to the situation and circumstances of the parties at the time of its execution and in the light of the construction given to it by the conduct of the parties since it went into operation, only one constantly flowing fountain was contemplated by the contract as included under the maximum price of $10,000.

*(3)  Construction of Contracts.*

In the construction of contracts, general terms are restricted and limited by particular recitals when used in connection with them.

*(4)  Construction of Contracts.   Acts of Parties.*

Where the construction of an instrument in writing is doubtful, and the parties have given a construction to it by acting upon it in a certain manner, courts will usually adopt and follow the construction of the instrument which has been adopted by the parties.

ASSUMPSIT.   Certified on agreed statement of facts.

JOHNSON, J.   This is an action of assumpsit brought by the plaintiff against the City of Newport to recover at the rate of three hundred dollars for supplying water to three constantly flowing drinking fountains belonging to the city

for and during a certain period. It was originally brought in the District Court where a decision was entered for the defendant and a jury trial was claimed by the plaintiff. The case has been certified to this court by the Superior Court under Gen. Laws, 1909, cap. 298, § 4, on an agreed statement of facts.

. The agreed statement of facts is as follows: "In the above entitled cause, the following facts are admitted as proved:

"1. That the Newport Water Works is a corporation created by law and is the successor and assignee of the hereinafter mentioned George H. Norman and that for the purposes of this action, said corporation has all the rights and privileges and is subject to all the liabilities and obligations which the said George H. Norman would have possessed and incurred.

"2. That on the 19th day of January, A. D. 1881, the following proposition was submitted to the qualified electors of the City of Newport and by said electors adopted and approved by a majority of affirmative votes, namely:

" 'Shall the City Council contract with George H. Norman to supply a full and ample quantity of water for the public use of the City, viz:—for all public buildings, hydrants, reservoirs and fountains and for sprinkling streets and flushing sewers, subject to all proper and reasonable restrictions against unnecessary waste, said Norman to furnish, set up and keep in repair, without expense to the City, but to be located by the City Council, as many hydrants, not to exceed the number of two hundred, as shall be required by said City Council, upon the following terms, namely:— at an annual compensation not to exceed the sum of ten thousand dollars, for a term of five years, said contract to carry the right to the City at the option of the City Council at the end of said term of five years, to continue or renew said contract for the remainder of the time of said Norman's exclusive right to lay down and maintain water pipes in the streets of Newport, the annual compensation to remain unchanged,

unless the permanent population of the City shall grow to exceed twenty-five thousand inhabitants, when the City and said Norman shall each appoint one person to determine by arbitration what increased annual compensation shall be paid him:—should said two persons fail to agree thereon, they two to appoint a third, and the decision of the three to be final and binding.   Said City to be guaranteed and secured in said contract the right at any time without paying any further compensation, to place, connect and use as many hydrants in excess of said two hundred as the City Council may deem necessary.'

"3.    That on the 23rd day of February, A. D. 1881, George H. Norman, now deceased, and who, at that time, was the owner of the Newport Water Works, and of its franchises, entered into a contract with said City of Newport for the supplying said City with water, which contract, a copy of which is hereto annexed as part hereof, was afterwards approved by a vote of the City Council on March 1st, 1881.

"That part of which relating to the question at issue herein provided as follows:—

" 'Now pursuant to the terms of said proposition and by virtue of the said acceptance thereof by said electors, it is hereby agreed between George H. Norman of said Newport, and the said City of Newport, a municipal corporation in the state aforesaid, acting herein by its City Council as follows:— Said Norman shall, for the next five years and after the first day of June, A. D. 1881, continuously supply said City of Newport with a full and ample quantity of fresh water, to the reasonable satisfaction of said City (from his Water Works and the pipes therewith connected laid in said Newport) for all the public uses of said City, from time to time and at all times, including and comprehending water for use in all the public buildings of said City, comprising the City Hall, the Police Station, the Fire Engine Houses, the Public School Houses and all other buildings, for the use of the Fire Department of said City in extinguishing, prevent-

ing and guarding against fire, operating steam fire engines and filling public reservoirs, for sprinkling streets and public places to lay the dust, for flushing sewers and for drinking fountains, and for all other public purposes at an annual compensation which shall never exceed the sum of Ten Thousand Dollars to be paid by said City in equal quarter yearly installments, the first whereof shall be made on the first day of September, A. D. 1881.

" 'And the said Norman shall begin to furnish and supply said water on the said first day of June next, at the rate or price of Seven Thousand Eight Hundred and Ten Dollars per annum, payable quarterly as aforesaid, in the buildings and through the hydrants and fountains and at the price or upon the apportionment here presently set forth, to wit: Water for Fourteen Spring Drinking Fountains of ordinary capacity, and one constantly running or flowing fountain on Washington Square, and for sprinkling streets and flushing sewers, say $1,800.

" 'Water and the right to have hydrants, fountains, faucets, water-closets and other means, conveniences and facilities for using water, for public purposes as aforesaid, in addition to what are designated or enumerated in the statement or schedule aforesaid, shall be granted and allowed to said City from time to time by said Norman, whenever and wheresoever said City may ask for the same, at these rates, that is to say:

" 'Spring fountains of the kind above mentioned at $25.00 a year each.

" 'Hydrants also of the kind above mentioned at $35.00 a year each.

" 'Steam Fire Engine Houses, as above mentioned, at $50.00 a year each.

" 'Hand Fire Engine Houses, as above mentioned, at $10.00 a year each.

" 'School Houses, as above mentioned, at $20.00 a year each.

" 'And whenever the price to be paid by said City for such work and the privileges and means of using the same at the rates aforesaid shall be equal to or exceed the rate of $10,000 a year in all, then said City shall pay only at that last mentioned rate of Ten Thousand Dollars a year, and all additional or greater use and privilege and means of using said water by the City under this contract shall be free of charge, it being the intent hereof and of the parties hereto that said City may always have as much water as it may need or desire and never pay more than Ten Thousand Dollars therefor in any year, unless upon and after the increase of population hereinafter mentioned.

" 'Said fountain on Washington Square, shall be of capacity of at least equal to that of the fountain now in operation there.   The other fountains shall be located by said City at its pleasure, and the water furnished hereunder for fountains and buildings shall be good, wholesome drinking water.'

"A copy of which said contract is hereto attached and marked 'Exhibit A.'

"4.   That on the 5th day of May, 1885, after oral negotiation with the Newport Water Works, the City Council of said City of Newport passed a resolution authorizing the erection of three Jenckes Fountains similar to that on Washington Square and approving the payment of the proportional part of Three hundred ($300) Dollars for the balance of the year to December 31, 1885, for the use of water, a copy of which said resolution is hereto annexed and marked 'Exhibit B;' that in pursuance of said resolution the said three Jenckes Fountains were erected in various parts of said City of Newport and thereupon the said City Council appropriated and ordered paid the sum of money necessary to erect said fountains and also the proportional part of the sum of three hundred dollars for supplying said fountains with water for the remainder of the municipal year.

"5.   That said three Jenckes Fountains so erected were similar to the 'constantly running or flowing fountain' on

Washington Square, mentioned in said contract of February 23, 1881.

"6. That on the 26th day of May A. D. 1886, the City Council passed a resolution, continuing the said contract made with George H. Norman and dated February 23rd, A. D. 1881, and said contract was continued and is now in force, a copy of which said resolution is hereto attached and marked 'Exhibit C.'

"7. That after the erection of said three fountains, the City of Newport paid to the Newport Water Works for supplying water to these three Jenckes Fountains, the sum of Three Hundred ($300) Dollars a year in addition to the sum of Ten Thousand ($10,000.) Dollars, which the aforementioned contract of February 23rd, A. D. 1881, had fixed as the maximum price for supplying water for one year as called for in said contract, and that said City of Newport continued to pay to the said Newport Water Works, for supplying water to said three Jencks Fountains, the sum of Three Hundred ($300) Dollars, annually up to the year 1892.

"8. That in the year 1892, the said City refused to pay said sum of Three Hundred ($300) Dollars per year to the Newport Water Works, as aforesaid, and said sum was not thereafter paid until the year 1896.

"9. That on January 1st, A. D. 1896, the Newport Water Works presented to the City Council of the City of Newport a claim for Twelve Hundred ($1,200) Dollars for the payment of the four years intervening at Three Hundred ($300) Dollars a year and for which no payment had been made as aforesaid; that, accompanying said claim was a communication from said Newport Water Works, setting forth the facts upon which it based said claim, a copy of which said communication is hereto attached and marked 'Exhibit D;' that said communication was by said Council referred to the Committee on Water Supply, which said Committee voted on the 26th day of February, A. D. 1896, to recommend the payment of said sum, and that at a meet-

ing of the City Council held March 3rd, 1896, a resolution was passed, authorizing the payment of Twelve Hundred ($1,200) Dollars 'for water supply for three constantly flowing public fountains used by the City in addition to the one constantly flowing fountain allowed by the contract between the City of Newport and the Newport Water Works for the time ending November 30th, A. D. 1895,' a copy of which said resolution is hereto attached and marked 'Exhibit E,' together with the voucher, showing payment of the same marked 'Exhibit F.'

"10. That thereafter said City continued to pay said Newport Water Works the sum of Three Hundred ($300) Dollars annually for said three fountains up to February 27th, A. D. 1907, and ever since that time the said City has refused to pay anything over and above the sum of Ten Thousand ($10,000) Dollars.

"11. That the said Newport Water Works claims that the said City of Newport owed it at the time of the date of the writ in this cause for water furnished said three constantly flowing fountains (in addition to the constantly flowing fountain on Washington Square) the sum of Three Hundred ($300)· Dollars up to November 30, 1907, and the proportional amount of Three Hundred ($300) Dollars from said day to the day of the date of plaintiff's writ.

"SHEFFIELD, LEVY & HARVEY,

"*Attorneys for Plaintiff.*

"JEREMIAH A. SULLIVAN,

"*Attorney for Defendant.*"

(1)     The vital question in this case is whether any other constantly flowing fountain, than the one specified as located on Washington Square, is included in the contract set out in the agreed statement of facts. No˙ other such fountain is included in specific terms. If such other fountain or fountains are included in the contract such inclusion must be gathered from the terms of the whole contract. The instrument must be considered in its entirety in order to ascertain

the full scope of its operation and the general plan and intention of the parties as disclosed thereby.  "It is a settled rule of construction of contracts, that the intention of the parties must govern when that intention can be clearly inferred from the terms of the contract, and can be fairly carried out consistently with the settled rules of law." Haile, J., in *Anthony* v. *Comstock*, 1 R. I. 454, 458.  See, also, *Reynolds* v. *Washington Real Estate Co.*, 23 R. I. 197, 202.  In this case Rogers, J., quotes Bramwell, J. in *Fowell* v. *Tranter*, 3 H. & C., 458, 461:  "The golden rule of construction is that words are to be construed according to their natural meaning, unless such a construction would either render them senseless, or would be opposed to the general scope and intent of the instrument, or unless there be some very cogent reason of convenience in favor of a different interpretation."

The contract provides that said Norman shall furnish water to the City of Newport for the next five years, and after the date mentioned "continuously supply said City of Newport with a full and ample quantity of fresh water, to the reasonable satisfaction of said City (from his Water Works and the pipes therewith connected laid in said Newport) for all the public uses of said City, from time to time and at all times, including and comprehending water for use in all the public buildings of said City, comprising the City Hall, the Police Station, the Fire Engine Houses, the Public School Houses and all other buildings, for the use of the Fire Department of said City in extinguishing, preventing and guarding against fire, operating steam fire engines and filling public reservoirs, for sprinkling streets and public places to lay the dust, for flushing sewers and for drinking fountains, and for all other public purposes at an annual compensation which shall never exceed the sum of Ten Thousand Dollars to be paid by said City in equal quarter yearly installments, the first whereof shall be made on the first day of September, A. D. eighteen hundred and eighty one."  That he shall begin to furnish and supply said water on said date "at the

rate or price of Seven Thousand Eight Hundred and Ten Dollars per annum, . . . in the buildings and through the hydrants and for fountains and at the price or upon the apportionment here presently set forth, to wit: Water for Fourteen Spring Drinking Fountains of ordinary capacity, and one constantly running or flowing fountain on Washington Square, and for sprinkling streets and flushing sewers, say $1,800."

(2)    The contract then provides for water and additional facilities for the use thereof, whenever and wheresoever the City may ask for the same, at certain stated rates, viz.:

"Spring fountains of the kind above mentioned at $25.00 a year each.

"Hydrants also of the kind above mentioned at $35.00 a year each.

"Steam Fire Engine Houses, as above mentioned, at $50.00 a year each.

"Hand Fire Engine Houses as above mentioned, at $10.00 a year each.

"School Houses, as above mentioned at $20.00 a year each."

For the additional conveniences enumerated for the use of water, certain specific rates are given. It is to be noted that the only rate given for fountains is for "Spring fountains of the kind above mentioned." Said rates are to continue until "the price to be paid by said city for such water and the privileges and means of using the same at the rates aforesaid shall be equal to or exceed the rate of $10,000 a year in all." The city is then to pay only at said last mentioned rate of ten thousand dollars a year "and all additional or greater use and privilege and means of using said water by the city under this contract shall be free of charge; it being the intent hereof and of the parties hereto that said city may always have as much water as it may need or desire and never pay more than Ten Thousand Dollars therefor in any year unless upon and after the increase of population hereinafter mentioned."

If it was. the intention of the parties that constantly flowing fountains might be added from time to time whenever and wheresoever. said city might ask for the same, as was provided in regard to the additional facilities mentioned, it seems strange that no provision therefor should be made in this list. Immediately after the provision as to said maximum rate of $10,000 per year follows the provision that "said fountain on Washington Square, shall be of capacity of at least equal to that of the fountain now in operation there. The other fountains shall be located by the City at its pleasure, and the water furnished hereunder for fountains and buildings shall be good, wholesome drinking water." In this last provision the distinction seems to be clearly drawn. *The fountain on Washington Square is to be of a capacity at least equal to that of the fountain now in operation there, while the other fountains,* which are clearly spring fountains, *shall be located by the City at its pleasure.*

Applying the rules of construction stated above, it seems clear, that looking to the contract as a whole it was not the intent of the parties to include under the maximum price of $10,000 any constantly flowing fountain other than the one particularly specified. The designation of this one fountain constitutes a limitation upon the contract for supplying water for a maximum price. It is a familiar rule, that in (3) the construction of contracts, general terms are restricted and limited by particular recitals when used in connection with them. *Railton* v. *Taylor*, 20 R. I. 279, 283; *Richmond* v. *N. Y., N. H. & H. R. R. Co.*, 26 R. I. 225, 226. In the latter case the court, Stiness, C. J., speaking of this rule, said: "Its purpose is to guard against an undue extension of a statute or a contract, when certain items have been specified and then general terms have been used with the enumerated terms presumptively in mind and with the intention to cover things generally of that class. The rule applies only when there has been a preceding statement by which the subsequent provision may be qualified. Pott, Dwarris, 236; Suth. on Stat. Con. § 268; *Railton* v. *Taylor*, 20 R. I. 279.

If it be urged that the contract is ambiguous upon its face, then evidence of the conduct of the parties set out in the statement of facts is pertinent. From said statement it appears that May 5, 1885, after oral negotiations with the Newport Water Works, which had succeeded said Norman in the business of supplying water under the contract, the city council of said City of Newport, passed a resolution authorizing the erection of three Jenckes Fountains similar to that on Washington Square and approving the payment of the proportional part of three hundred dollars for the balance of the year to December 31, 1885, for the use of water; that in pursuance of said resolution the said three Jenckes Fountains were erected in various parts of the city of Newport and thereupon said city council appropriated and ordered paid the sum of money necessary to erect said fountains and also the proportional part of the sum of three hundred dollars for supplying said fountains with water for the remainder of the municipal year; that after the erection of said three fountains the City of Newport paid to the Newport Water Works for supplying water to these three Jenckes Fountains, the sum of three hundred dollars a year in addition to the sum of ten thousand dollars which said contract had fixed as the maximum price for supplying water per year and continued to pay therefor annually at said rate up to the year 1892; that in that year said City refused to pay said compensation for said three fountains, and said sum was not paid thereafter until the year 1896; that January 1, 1896, the Newport Water Works presented its claim for twelve hundred dollars for the payment for the four years since 1892 for the supply of said fountains, with a communication setting forth the facts upon which it based its claim; and March 3, 1896, a resolution was passed authorizing the payment of said claim; that thereafter the City continued to pay said Newport Water Works the sum of three hundred dollars annually for said three fountains up to February 27, 1907, since which time said city has refused to pay anything over and above the sum of ten thousand dollars. These

acts may properly be considered as evidence of the construction put upon the contract by the parties. *Davis* v. *Manchester*, 17 R. I. 577; *Peck* v. *Goff*, 18 R. I. 94, 96. "Where the construction of an instrument in writing is doubtful, (4) and the parties thereto have given a construction to it by acting upon it in a certain manner, courts will usually adopt and follow the construction of the instrument which has been adopted by the parties." *Mueller* v. *Northwestern University*, 195 Ill. 236, 255. "If this contract is to be regarded as somewhat indefinite or ambiguous, we may resort to the surrounding facts and circumstances as they existed when it was made to aid us in its interpretation and also consider the practical construction which the parties have given it." Martin, J., in *Sattler* v. *Hallock*, 160 N. Y. 291, 301. In *Woolsey* v. *Funke*, 121 N. Y. 87, 92, Peckham, J., says: "But if I am not clearly right in this interpretation of the language, it must be admitted, as it seems to me, that the language is somewhat ambiguous or indefinite. Under such circumstances the practical interpretation of this agreement by both parties is a consideration of very great importance." As was said by Mr. Justice Swayne in *Insurance Company* v. *Dutcher*, 95 U. S. 269, 273: "The practical interpretation of an agreement by a party to it is always a consideration of great weight. The construction of a contract is as much a part of it as anything else. There is no surer way to find out what parties meant, than to see what they have done. Self-interest stimulates the mind to activity, and sharpens its perspicacity. Parties in such cases often claim more, but rarely less, than they are entitled to. The probabilities are largely in the direction of the former."

We are of the opinion that upon the terms of the contract, considered with reference to the situation and circumstances of the parties at the time of the execution thereof, and in the light of the construction given to the contract by the conduct of the parties since the same went into operation, only one constantly flowing fountain was contemplated by the con-

tract as included under the maximum price of $10,000 fixed in said contract for supplying water to the City of Newport.

The amount due the plaintiff on the date of its writ was $378.90.   Decision for plaintiff for $378.90 and costs.

The papers in the case will be sent back to the Superior Court for Newport County, with the decision of this court certified thereon, for further proceedings.

*Sheffield, Levy & Harvey*, for plaintiff.

*Jeremiah A. Sullivan*, City Solicitor, for defendant.