DECISION
This matter comes before the Court on plaintiffs Portsmouth Water Fire District ("Portsmouth") Motion for Partial Summary Judgment on its claim for declaratory judgment under Count II of the Complaint. Jurisdiction of this Court is pursuant to R.I. Super. R.Civ.P. 56 and 57.
Portsmouth supplies 90% of the water consumed by the Town of Portsmouth as the Town has no water supply of its own. On or about December 13, 1986, Portsmouth and defendant Stone Bridge Fire District ("Stone Bridge") entered into an Agreement whereby Stone Bridge agreed to supply water to Portsmouth until July 1, 2007 in accordance with the terms and conditions set forth in the contract Stone Bridge has supplied water to Portsmouth from the inception of the Agreement until April 30, 1999. Portsmouth is currently receiving its water supply from the Newport Water Department ("Newport").
The dispute between the parties began when Tiverton Power Associates ("Tiverton Power") proposed to construct an energy facility in Tiverton. On or about January 14, 1997, Stone Bridge sent a letter to the Town Administrator of the Town of Tiverton indicating that it is was capable of providing Tiverton Power with 250,000 gallons of water per day.
Tiverton Power went before the Rhode Island Energy Facility Sitting Board (the "Board") for approval of its plan. Portsmouth objected to the issuance of a license to Tiverton Power on the ground that the additional water supply to Tiverton Power would effect Stone Bridge's existing customer base. At the hearing, Portsmouth did not object to the issuance of the license but maintained that the Board should require Stone Bridge to expand its treatment capacity and have Tiverton Power bear the cost of the expansion. The Board declined to follow Portsmouth's conditional approval of Tiverton Power's license. The Supreme Court affirmed the Board's decision. Portsmouth Water and FireDistrict v. Rhode Island Energy Facility Sitting Bd., No. 98-180-M.P., Order entered September 9, 1998. Portsmouth has filed a Complaint asking, inter alia, the Court to issue a declaratory judgment requiring Stone Bridge to make 750,000 gallons of water per day available to Portsmouth prior to servicing Tiverton Powers needs.
Summary judgment is a drastic remedy that should be sparingly granted only when the pleadings, affidavits, and discovery materials demonstrate no genuine issue of material fact exists.Superior Boiler Works. Inc. v. R.J. Sanders, Inc., 711 A.2d 628. 631 (R.I. 1998) (citations omitted); R.I. Super. R. Civ. P. 56(c). The trial justice should "draw all reasonable inferences in favor of the nonmoving party and must refrain from weighing the evidence or passing upon issues of credibility." 711 A.2d at 631. However, the nonmoving party has an affirmative duty to specifically set forth all facts demonstrating a genuine issue of material fact. Sisters of Mercy of Providence. Inc. v. Wilkie,668 A.2d 650, 652 (R.I. 1996) (citation omitted). As such, the nonmoving may not rest upon "allegations or denials in the pleadings, mere conclusions, or mere legal opinions" to create a genuine issue of material fact. Rhode Island DEPCO v. Rignanese,714 A.2d 1190, 1193 (R.I. 1998) (citations omitted). After reviewing the evidence in the light most favorable to the nonmoving party, the trial justice may grant a summary judgment motion if there are no genuine issues of material fact, and the moving party's claim warrants judgment as a matter of law.Harritos v. Cambio, 683 A.2d 359, 360 (R.I. 1996) (citations omitted); R.I. Super. K. Civ. P. 56(c).
Portsmouth argues that Stone Bridge cannot satisfy the needs of its current customers without adding Tiverton Power as a new account. Pursuant to the Agreement, Portsmouth contends that Stone Bridge is obligated to provide "an uninterrupted and adequate supply of pure, fresh water fit for drinking and all other domestic purposes. . . ." Although Portsmouth is receiving its water supply from Newport, it cannot rely upon this supply for the long-term, Portsmouth asserts that the Agreement is unambiguous and the definition of adequate should require Stone Bridge to provide Portsmouth with water in an amount equal to the maximum use days of 750,000 gallons. Portsmouth maintains that the addition of Tiverton Power as a customer of Stone Bridge renders Stone Bridge's performance of the Agreement impossible, and constitutes an anticipatory repudiation. Portsmouth states that Tiverton Power can either expand its treatment capacity, or maintain the current treatment capacity and sell Tiverton Power whatever water remains after supplying its existing customers.
Stone Bridge counters that the Agreement specifically states that it is not required to furnish Portsmouth with water in excess in the aggregate of 175,000 gallons per day. Stone Bridge maintains that Portsmouth incorrectly interprets "an uninterrupted and adequate supply" of water to mean that Stone Bridge must supply Portsmouth with its maximum demand on any given day after its primary obligation to its own district is satisfied. Stone Bridge asserts that past transactions demonstrate that Portsmouth has requested water and Stone Bridge has met the demand. Stone Bridge maintains that Portsmouth is asking the Court to create a new agreement regarding the amount of water to be supplied.
Essentially, Portsmouth proffers the same arguments to this Court as it offered in Portsmouth Water and Fire District v.Rhode Island Enery Facility Sitting Bd., No. 98-180-M.P., Order entered September 9, 1998. It is undisputed that Stone Bridge has an adequate water supply to service the needs of its customers.Portsmouth Water and Fire District, No. 98-180-M.P., Order entered September 9, 1998 at 2. However, evidence presented at Stone Bridge's license heating demonstrated that Stone Bridge may reach or exceed its capacity to treat an adequate amount of water to meet the demand of its constumers during peak periods. Id. The Board determined that a capacity issue may arise in the future, but at present, there was no water supply issue. Id. Although Portsmouth had no objection to the license, it wanted the license conditioned upon approval of an upgrade on Stone Bridge's faciities. Id. at 3. In granting Tiverton Power's license, our Supreme Court determined that the Board "was appraised of Portsmouth's concerns about future treatment capacity and the need for expansion and that these concerns were addressed in its decision and order." Id. at 3-4.
When a contract is clear and unambiguous, a question of law exists as to the meaning of its terms. O'Connor v. McKanna,116 R.I. 627, 630, 359 A.2d 350, 353 (1976) (citing Cassidy v.Springfield Life Ins. Co., 106 R.I. 615, 619, 262 A.2d 378, 380 (1970)). The contract must be viewed in its entirety and its language given its plain, ordinary, and usual meaning. W.P.Assoc. v. Forcier. Inc., 637 A.2d 353, 356 (R.I. 1994) (citingAntone v. Vickers, 610 A.2d 120, 123 (R.I. 1992)). However, a question of fact exists if an ambiguity becomes apparent in the construction of its terms. Id. at 630-31. A contract is considered "ambiguous only when it is reasonably and clearly susceptible to more than one interpretation." Rotelli v.Catanzaro, 686 A.2d 91, 94 (R.I. 1996) (citing W.P. Assoc., 637 A.2d at 356). In interpreting unambiguous contracts, the Court will "consider the situation of the parties and the accompanying circumstances at the time the contract was entered into, not for the purpose of modifying or enlarging or curtailing its terms, but to aid in the interpretive process and to assist in determining its meaning." W.P. Assoc., 637 A.2d at 356 (quotingHill v. M.S. Alper Son, Inc., 106 R.I. 38, 47, 256 A.2d 10, 15 (1969)). Additionally, "[i]f general words are used in connection with specific words, the specific words generally follow the intention of the parties with greater exactness and accordingly, the general terms thus used are to be regarded as limited by the specific words." Antonio Marcaccio, Inc. v. Santurri,51 R.I. 440, 155 A. 571, 572 (1931) (quoting Newport Water Works v.Taylor, 34 R.I. 478, 486. 83 A. 833, 835 (1912)).
The Agreement specifically states that "the parties may agree from time to time as to the amount of water to be supplied. . . ." The Agreement contains a provision that Stone Bridge is to provide Portsmouth with "an uninterrupted and adequate supply of pure fresh water . . ., and the said Portsmouth District will purchase from said Stone Bridge District such water as said Portsmouth District may determine to be necessary. . . ." However, the Agreement also provides the following: "It is understood and agreed, however, that said Stone Bridge District shall not, in any event, be required to furnish to said Portsmouth District, water in excess in the aggregate of 175,000 gallons daily and that said Portsmouth District shall be permitted to obtain water from any other source."
Based upon the foregoing sections of the Agreement, the Agreement itself defines "uninterrupted and adequate supply." Portsmouth is required to pay for not less than 210,000,000 gallons of water per year and is credited against that number if Stone Bridge is "unable, because of contractual restrictions, operating difficulties or primary obligation, to supply Portsmouth District, on any given day, with an amount of water equal to the average daily amount required to equal 210,000,000 gallons per year . . ." The general language of "uninterrupted and adequate supply" is further defined by the specific language that Stone Bridge is not required to provide Portsmouth with water to exceed 175,000 gallons per day unless the parties agree from time to time. Portsmouth's argument regarding Stone Bridge's treatment capacity is speculative at this time. Furthermore, the Board has already addressed the capacity issue prior to granting Stone Bridges license. While Portsmouth is asking this Court to require Stone Bridge to make 750,000 gallons of water available to Portsmouth on a daily basis, Portsmouth is not even servicing its daily water demand from Stone Bridge.
The Court determines that the language of the Agreement is clear and unambiguous as to the terms and conditions of the contract. The Court will not create a new agreement regarding the amount of water to be supplied. Based upon the foregoing analysis, this Court "denies Portsmouth's Motion for Partial Summary Judgment.
Counsel shall prepare the appropriate order for entry.