ANNA ZWEIGHAFT, Plaintiff, *v.* MAX LANG et al., Defendants.

Supreme Court, Trial Term, Kings County, February 4, 1949.

*Samuel Schacter* for plaintiff.

*Israel Harkavy* for defendants.

DALY, J. Plaintiff sued defendants on two causes of action, one in fraud and the other for breach of contract. At the close of the plaintiff's case, the first cause of action was dismissed and decision reserved on the motion to dismiss the second, except with respect to the defendant, Minnie Weingarten. As to her, the entire complaint was dismissed.

The jury brought in a verdict in favor of the plaintiff for $2,259.68 with interest against the defendants Lang and the court reserved its decision on said defendants' motion to set it aside on the ground that it is against the weight of the credible evidence.

Implicit in the jury's verdict in favor of the plaintiff is the finding that the promise made by the defendants to the plaintiff and her husband on December 9, 1942, was an original promise and not a promise to pay the debt of another. The determination of that issue depended upon which version of the transaction the jury believed. By its verdict, the jury resolved that issue in favor of the plaintiff.

The essential question for determination here is whether the plaintiff adduced sufficient evidence to make out a case for an original promise by the defendants to pay the plaintiff an indebtedness owed by certain other persons and whether the result reached by the jury is against the weight of the credible evidence. It has been held that an original promise may be valid and effectual without a writing, whereas a promise to answer for the debt or default of another comes within the provisions of the Statute of Frauds (Personal Property Law, § 31, subd. 2; *First National Bank* v. *Chalmers,* 144 N. Y. 432).

The second cause of action of plaintiff's verified complaint alleged that on or about November 30, 1942, and on or about December 7, 1942, Byway Bakery, Inc. defaulted in the payment of two notes to the plaintiff, and that on December 7, 1942, there were no other defaults by said debtor. On the same day, plaintiff caused her attorneys to prepare papers to foreclose her chattel mortgage by reason of the aforesaid defaults; that thereupon " defendants requested plaintiff not to institute foreclosure proceedings and agreed to secure and effect payment of the monies due to plaintiff under her aforesaid chattel mortgage " (par. 11, complaint); that she relied " upon the aforesaid representations request and agreement of said defendants, did not institute foreclosure proceedings and forebore suit " (par. 12,

complaint). In plaintiff's bill of particulars, she stated that the defendants Lang '' made the requests as set forth in paragraph 11 of the Complaint. These requests were oral. Defendants requested the plaintiff not to institute foreclosure proceedings and agreed to secure and effect payment of the monies due to plaintiff.''

The plaintiff's husband, who acted in her behalf in this matter, gave the following testimony at the trial: '' Q Tell us just what was said (on December 9, 1942). A I called in Mr. Max Lang, and Sidney Lang. I called Max Lang and Sidney Lang followed him. So when he came in I said, ' Listen Max, you told me it's such a gold mine. Why did you put me into it. Now, look at that.' He said, ' What are you worried about?' I said, ' Listen, Max, we are still — we still got — we only collected forty-two hundred dollars, and you know I can't afford to lose that kind of money.' He says, ' Don't worry.' He says, ' They don't know their business. We will give them a little extension. Don't do nothing. Don't make no foreclosure.' I says, ' And how will I be protected?' He said, ' Listen, leave it to me. We will protect you. In case when it comes to a foreclosure and we will take back the place, you will get every dollar they owe you. Is it good enough? This is a promise from me and from my son.' I took their promise.

'' By the court: Q Did Sidney Lang say anything? A The same thing, yes.

'' Q Now, tell me exactly what he said in words. A Sidney Lang said to me — he said, ' Listen, Zweighaft, you know my father for how many years?' I said, ' For thirty-eight years.' He said, ' And you went in with some business with my father. Did he ever mislead you?' I said, ' No.' He said, ' Don't — so he won't mislead you now. Just do what my father says. That's all.' ''

The practical interpretation of an agreement has been held to be a consideration of great importance (*Woolsey* v. *Funke*, 121 N. Y. 87, 92). '' There is no surer way to find out what parties meant, than to see what they have done. Self-interest stimulates the mind to activity, and sharpens its perspicacity. Parties in such cases often claim more, but rarely less, than they are entitled to. The probabilities are largely in the direction of the former.'' (*Insurance Company* v. *Dutcher*, 95 U. S. 269, 273.) If the parties had considered the defendants' alleged promise as an original one, rather than one to answer for the debt of another, the plaintiff would have attempted, in the first

instance, to collect from the defendants the entire unpaid balance of the debt owing to her by the Byway Bakery, Inc. Instead, in 1943, the plaintiff filed a claim in bankruptcy against the estate of said corporation after the defendants had foreclosed their first mortgage, and thereafter obtained a substantial amount from the bankrupt estate. In 1945, without notice to the defendants, the plaintiff sued the indorsers on the notes and obtained a judgment against them for approximately $8,900. Then, again without notice to the defendants, she settled such judgment for the sum of $2,000, and the record shows no evidence that such indorsers were insolvent, and that she might not have collected the entire judgment, had she not compromised it. In so compromising, she unquestionably destroyed whatever rights of subrogation the defendants may have had.

It has been held that the elements of a beneficial interest and a new consideration must be present to take the case out of the Statute of Frauds (*White* v. *Rintoul,* 108 N. Y. 222, 227). However, the inquiry still remains whether the consideration is such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor (*Richardson Press* v. *Albright,* 224 N. Y. 497). As was stated by the late Chief Judge POUND, in the *Richardson* case (*supra,* p. 502): " When the primary debt continues to exist, the promise of another to pay the debt may be original or it may not be, but it is regarded as original only when the party sought to be charged clearly becomes, within the intention of the parties, a principal debtor primarily liable. If we pick a few phrases from the context, we may draw the conclusion that defendant intended to assume such a relation to the plaintiff, but on all the evidence we find but one principal primary debtor and that is Oceanic Publishing Company. The ancient purpose of the Statute of Frauds was to require satisfactory evidence of a promise to answer for the debt of another person and its efficacy should not be wasted by unsubstantial verbal distinctions."

A consideration of the entire record leads the court to the conclusion that the evidence in this case is not such as to show an original promise by the Langs to pay the debt of Byway Bakery, Inc., to the plaintiff. Under these circumstances, the verdict of the jury must be set aside and the complaint dismissed on the merits. The plaintiff is granted thirty days' stay of execution and sixty days to make and file a case.